**Yoon Boon LEE, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant.**

**Civil Action No. 02–cv–1153–JLK.**

United States District Court,
D. Colorado.

March 3, 2008.

---

4. The same amount actually charged to the plaintiff for legal consultation with defense expert Dr.

Anthony Dwyer as noted *supra*.

666

W. Randolph Barnhart, Angela L. Ekker, Barnhart, Ekker & McNally, LLP, Englewood, CO, Alfred Frank Paoli, Jr., Paoli & Brown, P.C., Livingston, MT, Richard Michael Kaudy, The Law Office of Richard M. Kaudy, Denver, CO, for Plaintiff.

Jon F. Sands, Kimberle E. O'Brien, Fischer, Sweetbaum & Levin, P.C., Denver, CO, Joseph F. Nistico, Jr., Nistico & Croutch, P.C., Houston, TX, for Defendant.

## ORDER ON OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

KANE, Senior District Judge.

On June 4, 2007 the Special Master filed his Report and Recommendations (Doc. 227) on Plaintiff's Motion to Compel (Doc. 204). At issue is the discoverability of 600 documents Plaintiff contends have been impermissibly withheld by Defendant on grounds of privilege and/or work product protection.[1]

Defendant filed its Objection to the Special Master's Report on June 27, 2007 (Doc. 233), to which I directed Plaintiff to respond. A significant portion of the Defendant's Objection disputes the "finding," attributed to the Special Master, that there are sufficient indicia of fraud on the part of Defendant's attorneys to permit application of the crime-fraud exception to privilege. Because that finding was mine as set forth in my various orders leading up to the appointment of the Special Master and overruling Defendant's objection to that appointment (Docs. 209, 212 & 217), it will not be revisited under any standard of review, de novo or otherwise.[2] Instead, I review the Master's individual assessment of Defendant's privilege claims and the application of any relevant exception to which objection is made.

## BACKGROUND AND PROCEDURAL HISTORY.

I recount briefly the procedural history leading up to the Special Master's appointment:

On September 19, 2005, Plaintiff filed a Motion For An Order Compelling Discovery pursuant to Fed.R.Civ.P. Rules 26(b)(1) and 37(a)(2) (Doc. 204), seeking to compel production of approximately 600 documents withheld by Defendant under various unspecified claims of attorney-client privilege and work product protection. Plaintiff asserted neither the privilege nor the work product doctrine applied based on the crime-fraud exception to privilege and Defendant's affirmative defense to Plaintiff's request for declaratory relief of reliance upon the advice of counsel.

On January 12, 2006, I issued my Order and Notice of Intent to Appoint Special Master (Doc. 209). My Order stated my concern arising from the information provided up to that time in the parties' filings. I found sufficient indicia of fraud to support the invocation of the crime-fraud exception and notified the parties of my intent to appoint a special master to conduct an *in camera* review of the documents that were the subject of the Motion to compel, review claims of attorney-client privilege and attorney work product, and to make findings and recommendations in accordance with the procedures set forth in Fed.R.Civ.P. 53.

---

1. A more complete statement of the facts is found in my Order and Notice of Intent to Appoint Special Master (Doc. 209), and is incorporated herein by reference.

2. In my Order Appointing Special Master (Doc. 212) I specifically stated that the Master's findings would be reviewable under the clearly erroneous standard set forth in Fed.R.Civ.P. Rule 53(g). While State Farm objected only to the identity of the Special Master appointed, and not the standard of review or scope of his appointment generally, it now maintains that, because it did not "stipulate" to the clearly erroneous standard under Rule 53(g)(3), that all of the Master's findings and conclusions must be reviewed, instead, de novo. I disagree. For the sake of clarity and out of an abundance of caution, I will apply the de novo standard to the Master's factual determinations—and the recommendations premised on them—to which appropriate objection is made.

By that Order and my subsequent Order Appointing Special Master (Doc. 212), Mr. Don was given the full panoply of powers expressed and permissibly implied by Fed. R.Civ.P. 53. Appropriate notice had been given in both orders of the nature and scope of the appointment and both sides had been invited to file any objections to it. While Defendant objected to the individual appointed, it did not object to the appointment generally. It is apparently necessary to note, in view of the objections made by the Defendant, the reference to the Special Master and his Report and Recommendation are limited to discovery disputes and the conduct of counsel in the course of litigation and are not and never have been considered a recommendation or adjudication of the merits of the pending lawsuit.

Following a gimlet-eyed examination of the court records and page-by-page review of the documents in question, the Special Master issued his Report and Recommendations together with an attached chart showing specific recommendations as to each document examined. The Special Master based his determinations on the correct legal premise that the quantum of proof necessary to the application of the crime-fraud exception is a prima facie showing that the exception applies to each document before the document can be stripped of its privilege. The Special Master made discrete findings in this regard, concluding the crime-fraud exception applies to some, but not all of the documents for which attorney client privilege and/or the work product doctrine were invoked. In addition, the exhibit tabulating his recommendations contains specific recommendations based on the "at issue" waiver doctrine.

## DISCUSSION.

As a general matter, I observe Defendant's objections are more petulant than probative and distinctly lacking in pertinence. The blanket objections to the documents reviewed by the Special Master lack particularization as to each document and are therefore of no value. Defendant persistently declaims the irrelevant. For example, Defendant vilifies Plaintiff's former counsel, Richard Kaudy, though his conduct has nothing to do with the questions of privilege and exception nor to the enquiry of whether Defendant's counsel engaged in unprofessional conduct. No motion has ever been raised bringing Mr. Kaudy's conduct into issue.

The Defendant likewise objects to the great weight the Special Master gave to the expert opinion of Richard Laugesen used by plaintiff to support her burden to establish the crime-fraud exception and criticizes the Special Master's not mentioning the opinion of its expert, John Grund. There is of course no error in not mentioning or describing every bit and item of evidence adduced during a proceeding. Only that evidence used as a basis for making conclusions need be referred to so as to avoid a criticism that no basis existed for the conclusion. Making findings or conclusions in the absence of evidence constitutes an abuse of discretion, but no such abuse occurs merely because other evidence is not described.

■ One must bear in mind that the purpose of the inquiry undertaken in this instance is not to reach a final adjudication, but rather to determine if the plaintiff has met her burden in order to proceed with discovery. For the crime-fraud exception to apply, the party opposing the invocation of the privilege must present *prima facie* evidence that the allegation of attorney participation in the underlying crime or fraud has some basis in fact. Mr. Laugesen's opinion amply meets this burden. The Special Master made it quite clear that he was persuaded by that testimony. I have reviewed the opinions of both experts and am likewise persuaded.

State District Judge Gasper F. Perricone found the failure by the Defendant to disclose information necessary for the Plaintiff to make an informed decision about settlement was done fraudulently. As I did in my Order and Notice of Intent to Appoint Special Master, the Special Master supported his Recommendation with Judge Perricone's finding. I note, however, that Judge Perricone's finding is not necessary to either my findings nor the Special Master's. Mr. Laugesen's testimony, which I find compelling and persuasive, provides an ample separate basis for any finding of fraud such that Defendants' urgings to disregard it are of no utility.

DEFENDANT'S OBJECTIONS.

Those objections that are legally cognizable, or nearly so, I address in the sequence presented in Document 233:

**1.** ***The Special Master's Reliance on Duties Allegedly Owed to State Farm's Insured was not Erroneous.***

■ The objection is overruled. The essence of the objection is that the Special Master made findings without direct evidence of communications between the Defendant, its other attorneys and the attorney selected and paid by State Farm to represent its insured in the underlying tort action and findings of a lack of credibility without having the latter attorney appear before him to testify. There is no such requirement in law. Circumstantial evidence is not only permissible in determining whether there is illicit conduct or agreement, it is indeed the usual and customary basis for doing so. Direct evidence is seldom available and few so-called "smoking guns" are ever discovered. What individuals actually do—and perhaps more significantly what they do not do—is more probative than gawping at them while they testify. The same can be said for findings on credibility issues. Indeed, visual, or so-called "live" testimony, where a witness is seen and heard, enjoys no elevated or preferred station in a hierarchy of criteria for determining credibility issues.

■ Testimony by written deposition alone is frequently admitted and considered by the fact-finder. Perhaps more to the point, credibility findings can, and often are, based on inferences. The fact-finding or adjudicative process is essentially an exercise of contextual analysis. So long as there are facts to support them or the absence of facts where such would normally be expected to occur (lacunae), the law permits, indeed depends upon, inferences from which justifiable conclusions can be drawn.

In this case, the Special Master made detailed findings of fact and drew justifiable inferences therefrom. He was not constrained by any law or rule to observe *soi-disant* "live testimony," nor was he required to conduct formal hearings. The Special Master in this case rightly concluded that under the circumstances presented the De-

fendant had a duty of candor owed to its insured and failed in that duty.

**2.** ***The Master's Refusal to Agree that any Duty to Advise Lee of the Risk to Thorne's Coverage Arising from the Bashor Agreement was Kaudy's, not State Farm's, was not Erroneous.***

■ The objection is overruled. I quote from Plaintiff's Response To Defendant's Objection To The Special Master's Report And Recommendation:

> In its Objection, State Farm argues that it was Kaudy's duty to inform Lee of the potential ramifications of entering into the Bashor, including the possibility that the coverage would be eliminated. Kaudy reasonably relied on Thorne's representation in the Bashor, which was also signed by Rodman, and reviewed by State Farm, that Thorne was in compliance with the cooperation clause of the policy. There is absolutely no evidence to indicate that Kaudy in any way knew that Baird and Giometti were actively engaged in a conspiracy to avoid coverage. State Farm's argument that Kaudy was somehow liable for failing to satisfy his obligations to his client is absurd and unfounded, particularly when State Farm was intentionally concealing the Excess Assurance Protection Letter from Kaudy and misleading thereby Lee, by allowing Thorne to affirm that he was in compliance with the policy.

Pl.'s Response (Doc. 236) at p. 8.

While this issue of fraud is a constituent part of the case to be decided by the court or a jury, the Special Master was charged with determining whether the documents supporting this allegation are discoverable. He had ample evidence including the Bashor agreement, date of filing of this declaratory judgment action and the deposition testimony to find that Kaudy was intentionally mislead by this Defendant and that discovery should be permitted to pierce the shields of the attorney/client privilege and the work product doctrine. More to the point, I have already ruled that the crime/fraud exception applies in this case. Because the Defendant has failed utterly to make specific objections related to any document, there is no basis to

determine whether any document ordered by the Special Master to be disclosed should be withheld.

### 3. Lee's Claim of Fraud Arising from the Excess Assurance Protection Letter is not Barred.

 No motion has ever been filed by the Defendant seeking to bar this claim. It is axiomatic that the state of the existing record is the basis for any decision. As such the Plaintiff may proceed on the state of the record and the Special Master may, indeed must, make his findings on that basis. The fact that the Express Assurance Protection Letter dated April 1, 2002 was not provided to Kaudy before the Agreement was consummated, as the record presently demonstrates, constitutes one of a number of bases for the crime/fraud exception to apply. More to the point, the Special Master was complying with my finding on the application of the exception and it was not within his authority to disregard it. Nor is it permissible for the Defendant to reargue this issue in the form of an objection to the Special Master's Report And Recommendation. This objection is overruled.

### 4. Reliance on the Laugesen Opinion was neither Erroneous nor a Deprivation of Due Process

 This objection is overruled. State Farm's objection is at best misleading. Mr. Laugesen was retained as an expert by Plaintiff Lee. For reasons of health—not mentioned by State Farm in its objection—Mr. Laugesen was unable to continue as a witness and therefore Mr. Hodges was substituted. Mr. Laugesen's withdrawal from the fray has nothing to do with the probity of his opinion. After a long and distinguished career as an attorney primarily engaged as an insurance defense counsel and as a highly respected teacher and author in the field, Mr. Laugesen now finds himself gratuitously vilified because his health does not permit him to continue. What he opined and wrote before this substitution, however, persuaded the Special Master and it likewise persuades me. State Farm's distorted conclusion that Mr. Laugesen is no more than another attorney representing the Plaintiff supports the aphorism that no good deed—or for that matter no good life—will go unpunished.

### 5. Because Ample Indicia of Fraud Exist Independently of Judge Perricone's January 2003 Order, the Special Master's Reliance on it, while not Erroneous in Any Event, is not Necessary to the Conclusions Reached.

 One is nonplused to read in the Defendant's Objection "The Special Master's *unilateral* recommendation that several of the documents on the privilege log should be produced on the basis that they are not privileged is erroneous since all the documents constitute communications between State Farm and SGM (Seaman, Giometti & Murphy, P.C.) and/or other counsel representing State Farm pursuant to C.R.S. § 13–90–107(1)(b) [emphasis original]." What, in this context, does "unilateral" mean? Its ordinary meaning is "done or undertaken by one person or party." (Webster's New Collegiate Dictionary, Merriam 1981 ed.). Such is the very essence of the adjudicative function and the specific office of this duly appointed special master. He is neither a convenor of meetings nor the chairman of a committee nor a factotum carrying the burdens of counsel's alleged agreements or stipulations. His hands cannot be tied except by the order appointing him and setting forth the authority delegated to him.

State Farm continues to object on the basis of a persistent challenge to my finding that the crime/fraud exception applies. That train has left the station. State Farm has failed utterly to identify any document with the required specificity and particularity that it believes was mischaracterized by the Special Master. That failure makes review by any standard impossible and therefore the blanket objection is overruled. The same ruling applies to State Farm's generic objection to the Special Master's Recommendation that SGM billing statements are not privileged. Absent discrete objections to specific billing statements, review is foreclosed.

### 6. The Master's Conclusions Regarding Specific Documents on the Privilege Log were not Erroneous.

 I have found the facts are sufficient to conclude that State Farm engaged in a

conspiracy to commit fraud. These facts include, but are not limited to, the following:

(A) State Farm failed to disclose to its insured that Lee was willing to settle her claims against Thorne for policy limits.

(B) State Farm failed to disclose to Lee that it would cover any judgment in excess of policy limits.

(C) State Farm retained Seaman for the sole purpose of avoiding coverage as obligated by its insurance contract.

(D) State Farm's counsel retained to represent Thorne intentionally and admittedly failed to forward the "comforting letter" *(See* 2 above) to Lee's attorney.

(E) Rodman, counsel hired by State Farm to represent Thorne, failed to advise Thorne against entering the Bashor agreement, knowing full well that State Farm intended to avoid coverage.

(F) Lee's case against Thorne was prolonged for specious reasons in the face of obvious liability.

(G) State Farm filed the Declaratory Judgment action in this case in furtherance of the conspiracy to avoid the payment of the insurance benefits.

The Special Master found, and I affirm, that the communications to and from State Farm and its counsel were for the purpose of continuing its fraudulent scheme. Under these circumstances, the Special Master properly found an "at issue" waiver of the privilege regarding communications between State Farm and SGM following the filing of the declaratory judgment action and State Farm's assertion of the defense of reliance upon the advice of counsel. The Defendant itself has infused the advice of counsel into this case as relevant to its claims and cannot now be heard to complain that the facts and circumstances regarding that advice be fully explored through discovery.

■ As I stated in *Bueno v. U.S. Bankruptcy Court,* 248 B.R. 581 (D.Colo.2000), "An abuse of discretion occurs where the trial judge [special master] fails to articulate a reason for his decision and no such reason is readily apparent from the record or articulates a reason which has no basis in fact or the reason so articulated is contrary to law. The reason given, however, need not be one that is agreeable to the reviewing court."

*See also, United States v. Wright,* 826 F.2d 938, 942 (10th Cir.1987).

## CONCLUSION.

The findings and conclusions enumerated in the Special Master's report are accepted and adopted as an Order of Court. The objections thereto are overruled. The Plaintiff shall have complete access to each document identified by the Special Master in the chart attached as Exhibit 1 and recommended by him for disclosure. Those documents identified by the Special Master as privileged with a(P) shall not be disclosed.

In addition to the *in camera* review of the documents subject to Plaintiff's September 19, 2005 Motion To Compel, I also directed the Special Master to include in his findings and recommendation consideration of all applicable rules of professional responsibility adopted by this Court. The recommendations with respect thereto are likewise accepted. I will defer considering the sanctions requested by Plaintiff pursuant to Rule 11, Fed.R.Civ.P., until the record is more fully developed.

Finally, pursuant to Fed.R.Civ.P. 53(h) the Special Master is ORDERED to submit an application for compensation which shall contain an accounting of hours expended in pursuit of this appointment, reasonably identifying the specific tasks undertaken, the requested and customary hourly rates of compensation together with any costs necessarily incurred and an affidavit by a person not associated with the Special Master in his practice of law attesting to the reasonableness of the request. The Court will provide counsel for all parties concerned the opportunity to be heard on the basis and terms for compensation and allocation of payment and will conduct such evidentiary hearings as are deemed necessary and appropriate with costs of that event to follow.

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

SHELLEY B. DON, Special Master.

This matter is before the Special Master pursuant to Judge Kane's Orders of January 20, 2006 and February 13, 2006. The Special

Master issues his Report and Recommendations as follow:

## I. *INTRODUCTION*

This litigation involves a dispute regarding the conduct of Defendant State Farm Insurance Company ("State Farm") in attempting to avoid coverage for liability for personal injuries caused by a State Farm insured in an automobile accident. Plaintiff Yoon Boon Lee ("Lee"), who was injured in the accident, asserts claims against State Farm for fraud, abuse of process, civil conspiracy and outrageous conduct and seeks an award of both compensatory and exemplary damages.

The immediate issues that require resolution arise from State Farm's claims of attorney-client privilege and attorney work product protection to prevent disclosure to Lee of certain documents in discovery. On January 20, 2006, the Honorable John L. Kane entered an Order appointing the undersigned as Special Master. The Order Appointing Special Master states that the assigned task is as follows:

> ... [T]o conduct an in *camera* review of the documents that are the subject of Lee's September 19, 2005 Motion to Compel. Pursuant to his appointment, the Special Master is authorized to review claims of privilege, attorney work product and to make findings and recommendations to the Court in accordance with Fed. R.Civ.P. 53(f). The Special Master shall include in his findings and recommendation consideration of all applicable rules of professional responsibility adopted by this Court.

Order Appointing Special Master at 1.

The Special Master has reviewed relevant portions of the case file and all of the briefing and case materials that have been presented by the parties, including the depositions of key witnesses and the pertinent deposition exhibits, and State Farm's privilege log and all of the documents in State Farm's in *camera* submission. Based on that review, the Special Master concludes that the principal issues to be addressed are:

1) whether the crime-fraud exception to the attorney-client privilege applies;

2) whether the crime-fraud exception extends to documents that were prepared after this litigation was filed, under Lee's theory that the prosecution of this action has been a series of continuing acts in the furtherance of a conspiracy that was devised by State Farm and its attorneys to fraudulently avoid paying damages for injuries suffered by Lee that were caused by State Farm's insured;

3) whether any other grounds exist to avoid or defeat State Farm's claims of attorney-client privilege or attorney work product protection; and

4) separate and apart from the considerations of attorney-client privilege or work product, whether there are any substantial questions regarding possible violations of any mandatory provisions of the Colorado Rules of Professional Conduct.

■ The Special Master finds and concludes that the crime-fraud exception applies and that it extends to documents that were prepared after this litigation was filed. At the outset, the Special Master notes that, as set forth in greater detail in the Conclusions of Law below, the quantum of proof necessary for the application of the crime-fraud exception is a "prima facie showing that the exception applies to each document before the document is actually stripped of its privilege...." *A. v. District Court*, 191 Colo. 10, 550 P.2d 315, 326 (1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). Any contested findings in the Findings of Fact below are based on the Special Master's review of the record and his determination that Lee has made a prima facie showing to establish these facts that support the application of the crime-fraud exception. Having made the determination that the crime-fraud exception applies, the Special Master finds and concludes, based on a page-by page review of every document in the *in camera* submission, that the crime-fraud exception applies to some but not all of the documents for which privilege and/or work product protection have been claimed. The Special Master has set forth his specific recommendations as to each document in the chart attached as Exhibit 1, adding a column

to State Farm's privilege log with the Special Master's recommendations.

In addition to the crime-fraud exception, Lee challenges the claims of privilege and work product based on the "at issue" waiver doctrine. Further, the Special Master has considered whether State Farm has either failed to establish its claims of privilege or work product or waived its claims by failing to provide the information necessary to support each claim on a privilege log that complies with the requirements of Fed.R.Civ.P. 26(b)(5)(A). The Special Master has considered these issues in the context of the legal framework below and has set forth his specific recommendations as to each document in the chart attached as Exhibit 1.

The Court's instruction that the Special Master must consider the conduct in this case under all applicable rules of professional responsibility has not affected the Special Master's determination of the privilege and work product issues that have been addressed. *See* Preamble to the Colorado Rules of Professional Conduct ("these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege."). These ethical considerations are for a different purpose than assessing the privilege and work product claims, and they have been undertaken on a different standard of review than the prima facie showing to establish the crime-fraud exception to the privilege. The Special Master views his limited task to be that of identifying any provisions of the Colorado Rules of Professional Responsibility with respect to which, in the judgment of the Special Master, there may be a "substantial question" as to whether the conduct at issue may have violated mandatory professional responsibilities. The purpose of this inquiry is not to make findings or conclusions, but rather, it is to aid the Court in the determination of whether any ethical issues warrant further action.

## II. *FINDINGS OF FACT*

On March 4, 1998, Larry Thorne ("Thorne"), a State Farm insured, was the driver of an automobile that struck Lee, a pedestrian crossing an intersection with the light. Lee sustained serious injuries including a right proximal humerus fracture, a right ankle fracture, a right rotator cuff tear,

scrapes and bruises and an L5 compression fracture. She also sustained damage to her mouth and teeth. She was subsequently diagnosed with post-traumatic vision syndrome, closed head injury and depression.

The accident investigation report disclosed that Thorne had used marijuana shortly before the accident. He was ticketed for vehicular assault, driving under the influence and careless driving, and he was also charged with possession of marijuana.

At the time of the accident, Thorne's insurance policy with State Farm provided liability coverage in the amount of $100,000. On March 17, 1998, before instituting suit, Mr. Richard Kaudy ("Kaudy"), who was counsel for Lee, made a time-limited demand for a policy limit settlement on State Farm. At or about the time that Kaudy made this demand, State Farm opened a claim file and initiated a claim log. However, State Farm did not convey to or inform Thorne of the demand. When State Farm failed to respond within the established deadline the demand was withdrawn and litigation ensued.

On April 23, 1998, Kaudy filed a complaint in the Arapahoe County District Court, asserting a negligence claim for Lee against Thorne and seeking exemplary damages. That civil action, with the case caption *Yoon Boon Lee v. Larry Thorne*, Case No. 98CV 1760, is hereinafter referenced as the "underlying case" or the "state court case."

After the complaint was filed, State Farm retained Mr. John Rodman ("Rodman") as counsel for its insured. The Special Master finds that Rodman is a seasoned insurance attorney who is intimately familiar with the complex coverage issues that were presented in this case. At the time of his retention on this matter, Rodman had a long history with State Farm. In the preceding eight years, State Farm had paid Rodman $6,107,937.67 in relation to 354 claims and 2,589 transactions for his work defending State Farm insureds and representing State Farm directly.

Rodman filed an answer on behalf of Thorne in which the defendant denied liability and pled the affirmative defense of comparative negligence. Although in his discov-

ery deposition Thorne denied the use of marijuana was a cause of the accident, the fact of his use of marijuana significantly increased his risk of liability for exemplary damages. This risk of liability personally exposed Thorne because State Farm's insurance policy provided no coverage for exemplary damages.

The Special Master finds that Rodman was fully apprised, early on, of a conflict between the interests of State Farm and Thorne. On July 29,1999, Kaudy wrote a letter to Rodman, setting forth in detail his analysis of the Thorne position vis a vis State Farm in view of its failure to settle the case for the policy limit demand. This letter included Kaudy's suggestion that Thorne may have a remedy against State Farm as a result of State Farm's alleged bad faith, and that this remedy could provide a means by which Thorne could avoid personal financial exposure from compensatory damages in excess of the policy limit. Further, in this letter Kaudy proposed that Lee would withdraw her claim for exemplary damages in exchange for Thorne's stipulation to liability, and he related that a State Farm adjuster had stated that she saw no financial advantage to Thorne in this proposal, even though it would have relieved him of his personal exposure to exemplary damages.

On March 6, 2002, Kaudy initiated discussions with Rodman to explore the possibility of entering into a stipulation to liability and the amount of damages, with an assignment to Lee of Thorne's rights to coverage under the insurance policy. This agreement is described herein as the "Bashor" agreement, shorthand for the case of *Northland Ins. Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972).[1]

On March 11, 2002, Rodman forwarded to State Farm a copy of the draft Bashor agreement sent to him by Kaudy. There is no dispute that Rodman had discussions regarding the Bashor agreement with Mr. Steven Baird ("Baird"), the State Farm "Team Manager" assigned to the case. However, the State Farm claim log that had been kept since Kaudy had made the pre-complaint demand contains no detailed notes or records of the discussions between Baird and Rodman relating to the proposed Bashor agreement, either as to the terms of the agreement being discussed or as to Baird's reaction and discussions with others in the State Farm organization. The failure to make entries regarding these communications of critical information contrasts conspicuously with the rest of the log which otherwise contains extensive entries regarding the various case activities. The Special Master finds that the failure to maintain its claims log under these circumstances where State Farm's routine practice was to make entries reflecting these communications gives rise to an inference that this failure was deliberate and intentional to avoid the creation of records that would have been unfavorable to State Farm.[2]

On March 21, 2002, State Farm retained the services of the law firm of Seaman, Giometti & Murphy, P.C. As stated in the engagement letter, this firm was hired "to represent State Farm and provide legal advice with respect to its rights and obligations in connection with the allegations of bad faith and the proposed 'Bashor' agreement." Both Mr. Gregory Giometti (hereinafter "Giometti") and Mr. Thomas Seaman (hereinafter "Seaman") provided legal services to State Farm in connection with this matter.

On March 28, 2002, Giometti performed research described in his billing as: "Re-

---

1. The facts in *Northland Ins.Co. v. Bashor* involved an assignment of rights post-judgment. Here the agreement was made before trial with the expectation that the entry of any judgment would be based on a stipulation between the parties as to both liability and damages. The distinction can be significant as it relates to the enforceability of the agreement. *See Ross v. Old Republic Ins. Co.* 134 P.3d 505, 511 (Colo.App. 2006) (a pre-judgment Bashor is not a valid Bashor agreement), *cert. granted,* (Colo. Oct 16, 2006) (The Colorado Supreme Court granted *certiorari* on several issues including: "Whether

court of appeals' holding that the settlement agreement was not a valid Bashor agreement conflicts with the supreme court's decision in *Northland Insurance Company v. Bashor)*"

2. *See e.g. Broccoli v. Echostar Communications Corp.,* 229 F.R.D. 506, 511 (D.Md.2005) ("The evidence of a regular policy at EchoStar of 'deep-sixing' nettlesome documents and records (and of management's efforts to avoid their creation in the first instance) is overwhelming.... EchoStar clearly acted in bad faith.").

search Re: Whether Insured Entering into Pre-judgment Agreement with Injured Plaintiff for Assignment of Bad Faith Claim Against Insurer Constitutes Failure to Cooperate under Policy."

On March 29, 2002, Giometti sent to Baird, by facsimile, a copy of *Hamilton v. Maryland Casualty Company*, 27 Cal.4th 718, 41 P.3d 128, 117 Cal.Rptr.2d 318 (Cal.2002), a California case holding that a stipulation between parties to an entry of judgment containing an agreed amount of money as damages would not be binding on an insurer not a party to the stipulation.

On March 30, 2002, Rodman sent a letter to Thorne enclosing a copy of the proposed Bashor agreement. He stated in this letter, inter alia, that "State Farm has had an opportunity to review the agreement...." There is no dispute that Thorne agreed to this Bashor proposal on the advice of Rodman, believing that he (Thorne) was cooperating with a strategy that had been approved by State Farm. It is further undisputed that Rodman did not advise Thorne of any potential consequences if State Farm asserted that the Bashor violated the cooperation clause in the State Farm policy.

On April 2, 2002, Baird forwarded a letter to Rodman "attach[ing] the excess assurance protection ('EAP') letter we discussed on March 28, 2002" and "requesting [Rodman] provide a copy to Mr. Thorne." The EAP letter stated State Farm's intention to remove the policy's limits of $100,000.00 for compensatory damages and further provided:

> In exchange for our promise to protect you from any compensatory damage award, you must comply with the cooperation clause of your policy and fulfill all policy duties and conditions throughout the entire claims process.

The EAP letter contained no explanation of the circumstances under which the cooperation clause might come into play and no explanation of how entering into the Bashor agreement might violate this provision. The

April 2, 2002 cover letter from Baird to Rodman that accompanied the EAP letter acknowledged that State Farm had been informed of the proposed Bashor but it did not disclose State Farm's position regarding its impact on the cooperation clause. That letter contained the following language:

> ... I would like to clarify that although you have sent me copies of Mr. Thorne's proposed agreement with Ms. Lee, that State Farm is not offering any type of input on the content of the agreement, and is not offering any advice or direction on whether Mr. Thorne should sign the agreement. Please call me if you have any questions.

The Special Master finds that when Baird sent the EAP letter to Rodman, Baird had full knowledge of the negotiations relating to the Bashor, and he knew that State Farm would take the position that the Bashor violated the cooperation clause in Thorne's policy under the reasoning of *Hamilton v. Maryland Casualty Company*. In making this finding, the Special Master notes that Baird had requested and received from Giometti editorial changes to both the EAP letter and the cover letter before sending them to Rodman.

The Special Master further finds that State Farm's position that the Bashor would violate the cooperation clause in Thorne's policy was a material fact that should have been disclosed to Thorne and that these letters were intentionally drafted to conceal that material fact from Thorne.

 The Special Master further finds that, based on the facts and circumstances and Rodman's previous experience representing State Farm, Rodman knew, when he received the EAP letter and the cover letter, that State Farm would take the position that the Bashor violated the cooperation clause. Even if Rodman did not have actual knowledge of this fact, he had a duty to confirm State Farm's position regarding the effect of the Bashor on the cooperation clause to be able to properly advise Thorne.[3]

---

3. Further, applying the standard of care in Colorado, an attorney owes a duty to his client to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out services for his client. One of these obligations is anticipating reasonably foreseeable risks. *Temple Hoyne Buell Foundation v. Holland & Hart* 851 P.2d 192, 198 (Colo.App.1992).

The Special Master further finds that the EAP letter was a material fact that should have been disclosed to Kaudy during the negotiations and communications regarding the proposed Bashor agreement. There is no dispute that after his receipt of the EAP letter, Rodman did not disclose the EAP letter to Kaudy or otherwise inform him that State Farm had lifted the policy limit as to compensatory damages.

On April 4, 2002, Giometti provided a twenty-nine page opinion letter to State Farm analyzing three issues: (1) whether the pre-judgment assignment of Thorne's bad faith claim to Lee would be binding and create a cause of action against State Farm, and, as a corollary issue, whether State Farm, if found to have acted in bad faith, would be bound to pay the amount of the stipulated judgment, $2,500,000, as damages; (2) whether, if Lee and Thorne were to enter into the stipulation, State Farm could deny coverage on the ground that Thorne has breached his duty to cooperate with State Farm; and (3) evaluation of the merits of Lee's contention that State Farm acted in bad faith by failing to accept her time-limited settlement demand. This letter contained the following conclusion:

> During our telephone conversations over the past week, we discussed the idea of sending Thorne an excess protection letter. It is my understanding that this has now been done. However, it appears that Thorne may still enter in the stipulated agreement for entry of judgment with a covenant not to execute and an assignment of his 'bad faith' claim. If he does enter into such a transaction, it is my opinion that State Farm would not be bound by the amount of the stipulated judgment and that the stipulated judgment and assignment would probably not even give rise to a viable bad faith claim against State Farm. If the agreement were determined to be binding against State Farm, the company would have an argument that Thorne's entry into the agreement resulted in a forfeiture of coverage. Finally, if the assigned bad faith claim against State Farm were allowed to proceed, State Farm would probably prevail on the merits of the case.

The Special Master finds that, if as of the date of this letter State Farm had not already informed Rodman of the positions expressed in this letter, State Farm had a duty to do so before Thorne entered into the Bashor agreement. Further, the Special Master finds that if Rodman had not been actually informed of the positions expressed in this letter before Thorne entered into the Bashor, based on Rodman's experience and the facts and circumstances presented, he either knew or should have known that State Farm would take these positions.

On April 15, 2002, Lee and Thorne entered into the Bashor agreement which was approved as to form by Rodman and Kaudy. In that agreement, the parties stipulated to the entry of judgment in favor of Lee and against Thorne in the amount of $2,500,000.00, with a covenant not to execute on that judgment and an assignment to Lee of Thorne's rights under State Farm policy.

The Bashor agreement contains a representation by Thorne at ¶ 18 that:

> ... Larry D. Thorne wishes to preserve his own financial assets and peace of mind and believes he has cooperated fully with State Farm Mutual Automobile Insurance Company during the pendency of the Civil Action No. 98 CV 1760 filed against him by Yoon Boon Lee. He has not been provided any information in any way indicating that by entering into this agreement he has failed to cooperate with any insurer, including State Farm Automobile Insurance Company; ....

The Special Master finds that, at the time of this agreement, State Farm and its attorneys, Giometti and Seaman, were aware of this representation by Thorne, State Farm's insured, and they were aware that State Farm had already determined that it would take the position that its insured was violating the cooperation clause by entering into this agreement. Under these circumstances, State Farm and its attorneys owed a duty to State Farm's insured to correct his misunderstanding of this material fact before he entered into the agreement. Further, State Farm and its attorneys owed a duty to Lee to correct the false impression created by this material representation and to disclose

that State Farm had already determined that it would take the position that its insured was violating the cooperation clause by entering into this agreement.

The Special Master further finds that at the time that Lee and Thorne entered into the Bashor agreement, Rodman knew or should have known that State Farm had already taken the position that this agreement violated the cooperation clause of Thorne's policy. Even if one were to assume *arguendo* that Rodman did not have actual knowledge of this fact, he was duty-bound, as an attorney representing Thorne, to advise his client that State Farm had not approved this agreement and to evaluate the risks to his client in entering into the Bashor without State Farm's approval. In making this finding, the Special Master notes that Baird testified in deposition that, even though he professed not to recall discussing this issue with Rodman, he believes that "Rodman is a good attorney and would know that that is a possibility."

The Special Master further finds that while Rodman was ostensibly representing Thorne, he was also acting as State Farm's agent in assisting State Farm to orchestrate this transaction in a fashion to conceal material facts from both Thorne and Lee.

In making these findings the Special Master has considered Rodman's billing records that reflect numerous communications with Baird before his client entered into this agreement and, as well, the conspicuous absence in the State Farm claim log of any detailed notes setting forth the discussions that Rodman had with Baird leading up to this agreement.

Further, the Special Master has considered the deposition testimony of Rodman in which he professes a failure to remember any of the substance of his discussions with Baird regarding the proposed Bashor agreement before its execution. The Special Master finds that this testimony lacks credibility.

Further, in making these findings, the Special Master reviewed the two volumes of videotaped deposition of Baird to observe his demeanor at the deposition and to assess his credibility. The Special Master finds that Baird was not credible in testifying that he did not recall the substance of his discussions

with Rodman regarding the cooperation clause issues before Thorne and Lee entered into the Bashor agreement.

On June 14, 2002, judgment was entered against Thorne in the underlying action for the stipulated amount, plus interest and costs. Just three days after the entry of judgment, on June 17, 2002, State Farm represented by Seaman and Giometti, filed this current action in this Court, naming both Lee and Thorne as defendants and seeking, *inter alia*, a declaration of no coverage based on the allegation that Thorne had breached his insurance contract with State Farm by failing to cooperate. The Special Master finds that State Farm's filing of the declaratory judgment action in this Court, just three days after the entry of judgment in the state court action, was the execution of a plan that had been developed by State Farm, Giometti, Seaman and Rodman before Thorne and Lee had entered into the Bashor agreement.

On July 8, 2002, after the filing of the declaratory judgment action, Kaudy learned of the existence of the EAP. Then, on July 22, 2002, Kaudy filed an answer and counterclaim on behalf of Lee in the instant action, and he later filed an amended answer and counterclaim on August 9, 2002.

On July 31, 2002, Mr. Robert Baldwin (Baldwin), representing Thorne, filed an answer and a counterclaim for breach of contract, bad faith, willful and wanton breach of contract, outrageous conduct and violations of the Colorado Consumer Protection Act.

The materials reviewed by the Special Master include the opinion letter, dated September 24, 2002, authored by Richard Laugesen, Esq. Mr. Laugesen is an expert in the area of insurance law and practice retained on behalf of Lee. In his letter, Mr. Laugesen opined that State Farm became liable for any excess damages of Lee by unreasonably failing to respond to her time-limited demand under the rule of *Aetna Casualty & Surety Co.v. Kornbluth*, 28 Colo.App. 194, 471 P.2d 609 (1970) (*cert. denied*), and by doing so without informing Thorne of the opportunity to resolve the matter within liability insurance protection. Mr. Laugesen further opined that:

In April and May of 2002, State Farm committed additional tortious acts. With knowledge that Mr. Thorne was about to enter into an assignment agreement [recognized in Colorado as a 'Bashor'—type agreement] and without disclosing to Mrs. Lee's attorney its acknowledgment of responsibility for the entirety of any judgment that might be rendered against Mr. Thorne [as it should have done back in July of 1999], State Farm had the attorney it appointed for Mr. Thorne go through with the assignment agreement with the attorney for Mrs. Lee, including the entry of the stipulated Judgment. State Farm then pounced on Mr. Thorne and Mrs. Lee, claiming that the assignment agreement [which State Farm had through its agent John Rodman induced and encouraged] was a breach of Mr. Thorne's 'duty to cooperate,' which allegedly voided any coverage under the State Farm policy. After inducing the agreement State Farm then immediately embroiled Mrs. Lee and Mr. Thorne in expensive federal court litigation.

In my opinion, this latest conduct by State Farm was deceitful, highly inappropriate and compounding of its other previous conduct. Such actions, in my opinion, were and are outrageous within the contemplation of C.J.I. (4th) 19:2 and 23:1.

\* \* \*

It is further my opinion that the Declaratory Judgment action commenced and being prosecuted by State Farm is baseless and frivolous. It is actually worse than baseless and frivolous in that it is an attempt to use the federal judicial system to assist State Farm in its perpetrating and attempting to benefit from its own deceptive and tortious misconduct.

\* \* \*

In my opinion, all of State Farm's conduct since July of 1999 has been at least 'willful and wanton' as defined by C.J.I. (4th) 9:32 and C.R.S. 13–21–102. It is further my opinion that State Farm's willful and wanton conduct has been continuing since at least July 1999 through the date of this report. As a result, the provisions of C.R.S. 13–21–102(3) pertaining to entitlement to enhanced exemplary damages are applicable.

The Special Master finds Mr. Laugesen to be a highly regarded and well qualified expert in the area of insurance law and practice in Colorado and gives great weight to his opinions expressed in his letter and at his deposition.

The Special Master finds that the conspiracy continued after the filing of the declaratory judgment action. On September 23, 2002, in furtherance of the strategy that had been developed by State Farm and its attorneys, State Farm filed a motion to establish that Thorne had waived his attorney-client privilege with Rodman by filing a counterclaim alleging State Farm's bad faith. State Farm premised its motion on the "at issue" waiver recognized by the Colorado Supreme Court in *Mountain States Telephone & Telegraph Co. v. DiFede*, 780 P.2d 533 (Colo.1989).

Both Lee and Thorne responded to the motion with arguments pointing the Court towards a partial waiver resolution, expressing concern that State Farm was attempting to further create a dilemma for Thorne by arguing that he must maintain the privilege to defend the underlying suit and waive it to allow State Farm to defend his claims against it in the declaratory judgment action. The Motion was denied by the Honorable John L. Kane in his Memorandum Opinion and Order, dated November 15, 2002.

On December 30, 2002, as a part of the continuing conspiracy, State Farm filed its Motion for Partial Summary Judgment on its declaratory judgment claim. The Special Master finds that by seeking to achieve a determination that the Bashor was not binding on State Farm, when State Farm had orchestrated the events leading to execution of this agreement, this motion was an act in furtherance of the strategy that had been developed by State Farm, Giometti, Seaman and Rodman before Thorne and Lee had entered into the Bashor agreement.

While this litigation proceeded, on July 30, 2002, Kaudy moved to vacate the judgment in the state court case. The implication of the Kaudy motion to vacate was the resurrection of the underlying state court case by Lee against Thorne, in which State Farm would have the responsibility to defend Thorne.

On January 23, 2003, Senior Judge Gaspar F. Perricone, sitting on the state court case by assignment of the Colorado Supreme Court, considered and granted the motion to set aside the judgment, finding that it had been procured by fraud. His findings are central to the issues that the Special Master has been assigned to consider and are, therefore, quoted herein, as follows:

The salient issues which the Court must decide are:

1. The character of the April 2, 2002 letter from the insurer to the Defendant. Is it an offer which requires an acceptance before disclosure pursuant to Colo.R.Civ.P. 26(a)(1) is required, or is the letter only a modification of an existing insurance policy?

2. Are the facts contained in the letter material?

3. Was the failure to disclose the letter fraud?

The Court finds that the letter is not an offer that requires an acceptance before it is an agreement between the insurer and the Defendant. On the contrary, the Court finds that the letter is a statement by the insurer that the policy limits have been expanded, and that no additional consideration exists. That portion of the letter that requires the Defendant to comply with the term of the policy is only an affirmation of the Defendant's then-existing contractual duties.

The Court further finds that the information in the letter is material information which would aid the Plaintiff in making an informed decision, and that in equity and good conscience the Defendant knew that without disclosing the letter the Plaintiff would not be sufficiently advised to make an informed decision when she executed the stipulation for entry of judgment.

The Court further finds that the Plaintiff relied on the insurer's statements, which were contrary to the facts as stated in the letter, that the Defendant knew or should have known that without disclosure of the facts contained in the letter that the Plaintiff would not be sufficiently advised to make a knowing decision when she entered into the stipulation for judgment, that the letter was not disclosed, and the Plaintiff was damaged thereby.

Therefore, the Court finds that the failure to disclose was done fraudulently, and the Plaintiff's Motion to Vacate Judgment is granted. The judgment entered on June 14, 2002 be vacated and held for naught.

The Special Master notes that there are substantial questions—not addressed by the parties in their briefing—regarding whether the findings of Judge Perricone are binding in this litigation based on either claim or issue preclusion. The Special Master does not apply either claim or issue preclusion in this Report, leaving those questions to be addressed by the Court if later raised by either of the parties. Nevertheless, the Special Master finds, based on his independent review of the materials presented, that Judge Perricone's findings are persuasive and well-supported, and based on the record provided, the Special Master adopts the same findings as are set forth therein.

Following Judge Perricone's ruling, on February 3, 2003, State Farm moved for the withdrawal of Plaintiff's Motion for Partial Summary Judgment that had been filed on its declaratory judgment claim. Further, Lee moved to amend her counterclaim in this action to add claims of fraud, civil conspiracy and abuse of process.

On April 3, 2003, this Court recognized the changing legal framework of this litigation by ordering the realignment of parties, with Lee and Thorne designated as plaintiffs and State Farm as defendant, and ordered Lee and Thorne to file revised pleadings in the form of complaints no later that April 25, 2003.

On June 26, 2003, Kaudy was granted leave to withdraw as counsel in this case, and attorneys from Barnhart, Ekker & McNally, L.L.P., and Paoli and Brown, P.C., entered their appearances for Lee, and, on April 25, 2003, they filed an Amended Complaint on behalf of Lee, alleging fraud, civil conspiracy, abuse of process and outrageous conduct.

On May 5, 2003, Thorne and State Farm stipulated to the dismissal of Thorne's claims against State Farm.

On May 31, 2003 Seaman, Giometti & Murphy, P.C., moved to withdraw as counsel for

State Farm, and Jon Sands, Esq., entered his appearance.

### Proceedings on the Motion to Compel

On July 5, 2005, Lee served written discovery entitled "Supplemental Request for Admissions and Request for Production of Documents to Defendant" seeking communications between State Farm's agents and employees and Seaman. In response to this request, State Farm agreed to produce all communications involving Seaman up to June 17, 2003, the date the declaratory judgment action was filed, but objected to discovery of communications after the filing. State Farm filed a fifty-eight page privilege log, addressing communications between Seaman and State Farm after the filing of the action. Lee moved to compel the production of the post-filing items listed on the privilege log and argues that State Farm should be ordered to produce all communications with Seaman based upon the crime-fraud exception to the privilege and the "at issue" waiver doctrine.

### III. *CONCLUSIONS OF LAW*

#### *Attorney Client Privilege and the Crime–Fraud Exception*

Pursuant to Federal Rule of Evidence 501, in this diversity case privilege is governed by state law. In Colorado, the attorney-client privilege is codified in C.R.S. § 13–90–107(1)(b) as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; . . . .

In *Wesp v. Everson*, 33 P.3d 191, 196–97 (Colo.2001), the Colorado Supreme Court explained the public policy underlying the attorney-client privilege and acknowledged its tension with the judicial system's truth-seeking goals. The Court stated: "[T]he harshness of the operation of the privilege is softened by a number of exceptions and by the doctrine of waiver, all of which are consistent with the goals of the privilege." *Id.* at 197.

Colorado has limited the scope of the attorney-client privilege in matters where the communications between a client and his attorney are made for the purpose of aiding the commission of a future crime or a present continuing crime. *A. v. District Court,* 550 P.2d at 324; *Losavio v. District Court,* 188 Colo. 127, 533 P.2d 32 (1975). This exception was extended to cases involving civil fraud in *Caldwell v. District Court,* 644 P.2d 26 (Colo.1982) and is now known as the "crime-fraud" exception to the attorney-client privilege.

As stated above, the quantum of proof necessary for the application of the crime-fraud exception is "a prima facie showing that the exception applies to each document before the document is actually stripped of its privilege and admitted into evidence." *A. v. District Court,* 550 P.2d at 326 (1976). "A prima facie showing exists where the plaintiff raises a reasonable inference. . . ." *First Horizon Merchant Services, Inc. v. Wellspring Capital Management, LLC,* 166 P.3d 166, 172 (Colo.App.2007). "Inferences from circumstantial facts may frequently amount to full proof of a given theory, and may even be strong enough to overcome the force and effect of direct testimony to the contrary." *The Wenona,* 19 Wall. 41, 86 U.S. 41, 58, 22 L.Ed. 52 (1873); *Pregeant v. Pan American World Airways, Inc.,* 762 F.2d 1245, 1249, n. 5 (5th Cir.1985). "[Federal]Rule[of Evidence] 401 declares a liberal relevancy standard that incorporates notions of both materiality and probativity." *U.S. v. McVeigh,* 153 F.3d 1166, 1190 (10th Cir.1998). A fact is material or "of consequence" under Rule 401 "when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue. . . ." *Cook v. Rockwell Intern. Corp,* No. Civ.A. 90–CV–00181–J, slip op. at 59, 2006 WL 3533049 (D.Colo. Dec.7, 2006).

In the present case, analysis of the crime-fraud exception to the attorney-client privilege requires consideration of the elements of rules related to non-disclosure or concealment. As stated by the Colorado Court of Appeals in *Bair v. Public Service Employees Credit Union,* 709 P.2d 961, 962 (Colo.App.1985) (quoting from the Restatement (Second) of Torts § 551(2) (1977)):

> One party to a business transaction is under a duty to exercise reasonable care to

disclose to the other before the transaction is consummated

\* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect the disclosure of those facts.

In addition, the Amended Complaint contains a claim for civil conspiracy. In this claim, Lee alleges, *inter alia*:

The actions of State Farm, Rodman and /or Seaman in concert by words and conduct conspired to accomplish the unlawful goal of defrauding Lee exemplified by deceiving Lee into signing the agreement with Thorne through the events described above, by committing a fraud upon Lee as determined by Judge Perricone, in using that unlawful fraud as part of its initiation for its declaratory judgment suit filed against Lee in federal court, and in using that action to perpetuate its fraud against Lee, all of which has caused Lee injuries, damages and losses in amounts to be determined at trial.

■■■ There are five elements required to establish a civil conspiracy in Colorado. There must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 498 (Colo.1989). "The essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from it." *Id.* at 502. Moreover, "[a] conspiracy may be implied by a course of conduct and other circumstantial evidence.... There must be some indicia of agreement in an unlawful means or end." *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326–7 (Colo. App.1992).

■■■ To establish a claim for fraudulent concealment or non-disclosure, the plaintiff must show that the defendant had a duty to disclose the information. *Bair*, 709 P.2d at 962. Whether a defendant had a duty to disclose a particular fact is a question of law.

*See Van Winkle v. Transamerica Title Insurance Co.*, 697 P.2d 784 (Colo.App.1984). A person has a duty to disclose to another with whom he deals facts that "in equity or good conscience" should be disclosed. *See Eckley v. Colorado Real Estate Commission*, 752 P.2d 68 (Colo.1988).

■■■ Under Colorado law, there is a quasi-fiduciary relationship between an insurer and its insured. In *American Family Mutual Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004), the Colorado Supreme Court stated:

An insurer must deal in good faith with its insured. The insurance contract imposes a 'quasi-fiduciary' relationship between the insurer and insured that imposes an implied covenant of good faith upon the insurer. This special relationship gives rise to a separate action in tort when the insurer breaches its duty of good faith and fair dealing.

(Citations omitted); *see also Farmers Group Inc., v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984).

■■■ Applying these legal principles to the facts of this case, the Special Master concludes that Lee has made a prima facie showing that State Farm and its attorneys, Seaman and Giometti, and Rodman, as Thorne's counsel but also acting as State Farm's agent, knew and concealed the fact from Thorne that State Farm would consider Thorne in breach of the cooperation clause of his policy if he entered into the proposed Bashor agreement. Further, Lee has made a prima facie showing that State Farm and its attorneys and agent knew and concealed the fact from Thorne that after creating the false impression that Thorne was cooperating with a strategy approved by State Farm and its attorneys, State Farm intended to file a lawsuit naming Thorne as a defendant. These facts that were concealed were material and State Farm and its attorneys and agent concealed and failed to disclose these facts with the intent of creating a false impression of the actual facts in Thorne's mind. Further, Thorne by acting in reliance on a misunderstanding of the true facts, allowed State Farm to set in motion the events that resulted in the prosecution of the declaratory judgment action.

Separate and apart from the duties owed to Thorne, State Farm and its attorneys and agent can be liable in damages under the facts of this case to Lee. *See Holmes v. Young*, 885 P.2d 305, 311, (Colo.App.1994); *Zimmerman v. Dan Kamphausen* 971 P.2d 236, 241 (Colo.App.1998).[4] The Special Master concludes that Lee has made a prima facie showing that State Farm and its attorneys and Rodman "in equity and good conscience," should have disclosed to Lee the information in the EAP letter before Lee signed the Bashor agreement. Further, they should have disclosed that material facts had been concealed from Thorne and that he (Thorne) was entering into the Bashor agreement with the misimpression that he was cooperating with a strategy that State Farm had approved when, unbeknownst to Thorne, State Farm planned to file the declaratory judgment action against both Thorne and Lee as soon as the ink on their signatures on the Bashor agreement had dried. The Special Master concludes that Lee has made a prima facie showing that State Farm and its attorneys, Seaman and Giometti, and Rodman as State Farm's agent, concealed these facts from Lee, and that Lee relied to her detriment on false information when she entered into the Bashor agreement.

Pertinent to the issues raised in the Motion to Compel, the Special Master concludes that Lee has made a prima facie showing that State Farm's filing of the declaratory judgment action was in furtherance of a plan to perpetrate a fraud that had been developed by State Farm, its attorneys and its agent before the Bashor was signed and that the fraud continued after the filing of the declaratory judgment action. The actions in furtherance of this plan include the filing of State Farm's Motion Re: Waiver of Attorney–Client Privilege, filed September 23, 2002, and State Farm's Motion For Partial Summary Judgment, filed on December 30, 2002. These acts continued up through the ruling of Judge Perricone when State Farm's actions were exposed and the case that State Farm and its attorneys and agent had devised disassembled.

As stated above, the application of the crime-fraud exception requires a review of each document for which the privilege is claimed. Applying the conclusions set forth herein, the Special Master's recommendations regarding disclosure based on the crime-fraud exception are set forth in the attached chart (Exhibit 1), containing recommendations as to each document.

### At Issue Waiver

■ In *Mountain States Telephone & Telegraph Co. v. DiFede*, 780 P.2d at 543, the Colorado Supreme Court adopted the "at issue" waiver to the privilege as the law in Colorado. In that case the Court stated:

> Although we have not directly addressed this issue before, it is clear from our review of cases from other states that by placing in issue a confidential communication going directly to the claim or defense, a party impliedly waives the attorney-client privilege with respect to that communication.

*Id.; see also Metro Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 477 (D.Colo.1992) ("a party impliedly waives the attorney-client privilege when he places a claim or defense at issue, and the document or information in question has a direct bearing on that claim or defense"). This doctrine is based on principles of fairness. *See e.g.* Restatement (Third) of Law Governing Lawyers § 80 cmt. b and Reporter's Note (2000).

■ Lee, as the party seeking to overcome the privilege, has the burden of proving waiver. *DiFede*, 780 P.2d at 542. In *DiFede*, the Colorado Supreme Court held that a privilege holder impliedly waives the privilege when the following factors are shown:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the

---

**4.** *See also Anstine v. Alexander*, 128 P.3d 249, 256 (Colo.App.2005) ("the law does not insulate aiders and abettors from liability simply because they acted in the course of fulfilling separate and distinct duties as lawyers"), *rev'd on other* grounds, *Alexander v. Anstine*, 152 P.3d 497, 503 (Colo.2007) ("We save for another day the question of whether an attorney can ever be liable for aiding and abetting a breach of fiduciary duty to a non-client.").

protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

780 P.2d at 543–44.

In consideration of the application of the *DiFede* factors, in the context of the findings of fact set forth above, the Special Master concludes first that the present assertion of the privilege was ultimately a result of an affirmative act by State Farm. This litigation was originally filed by State Farm, and State Farm persisted in its strategy until after the ruling by Judge Perricone. Second, by pursuing this strategy, State Farm placed at issue in this litigation the communications that it now claims to be privileged. Third, having reviewed the documents in the *in camera* submission, the Special Master concludes that the application of the privilege would deny Lee of vital information that she would have needed to defend against the declaratory judgment action and to prosecute her claims. Further, as previously noted, State Farm, itself, has relied upon the "at issue" waiver doctrine as a basis for its motion that asserted that Thorne had waived privilege.

The Special Master concludes that the *DiFede* factors have been established by the facts of this case and the "at issue" waiver should be applied accordingly. Applying the conclusions set forth herein, the Special Master's recommendations regarding disclosure based on the "at issue" waiver are set forth in the attached chart (Exhibit 1), containing a recommendation as to each document for which the privilege has been claimed.

### *The Privilege Log*

 The Federal Rules of Civil Procedure sets forth the requirements for asserting claims of privilege on a log in accordance with the provisions of Fed.R.Civ.P. 26(b)(5)(A) as follows:

(5) Claims of Privilege or Protection of Trial–Preparation Materials.

(A) Information Withheld. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

The failure to comply with this rule results in a waiver of the claims of privilege. *See Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 649 (D.Colo.2004) (failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted); *Pham v. Hartford Fire Insurance Company*, 193 F.R.D. 659, 662 (D.Colo.2000) (same); *see also, Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 668–69 (D.Kan.2004) ("It is well settled that when a party withholds documents or other information based on a privilege or work product immunity, the 'party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'"); *Horton v. U.S.*, 204 F.R.D. 670, 673 (D.Colo.2002) ("the cases imposing the requirement of a privilege log do not carve out of the requirement documents between a lawyer and client created after the initiation of the litigation."); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D.Kan.2000).

This case law is grounded in the bedrock principle that the party asserting the claim of privilege bears the burden of establishing its applicability. *See Wesp*, 33 P.3d at 196–97 (attorney-client privilege). The Colorado rule requiring a privilege log (C.R.C.P.26(b)(5)) is patterned after the federal rule, and the law of waiver for failure to comply with this rule applies whether under Colorado or federal law. *See Alcon v. Spicer*, 113 P.3d 735, 741–42 (Colo.2005) ("when a party wishes to assert privilege in response to a discovery request he or she must notify the party seeking disclosure by providing a privilege log identifying the documents withheld and explaining the privilege claim.").

The Special Master has been provided with State Farm's privilege log. The log is pre-

sented in the form of a spreadsheet with headings enumerating the following subjects:

1. document number;
2. bates number (Seaman);
3. nature of document, communication or other material;
4. date of origin; and
5. reason for not producing or not disclosing.

While these categories purport to comply with the requirements of the privilege log rule, the Special Master concludes that in numerous instances, State Farm has failed to provide information sufficient to satisfy these requirements. Examples of this failure are State Farm's blanket assertion of privilege in the billing records and numerous facsimile cover sheets, requiring the Special Master to review these materials without having been provided the specific information required to assist the Special Master to evaluate the claims.

Applying the conclusions set forth herein, the Special Master's recommendations regarding disclosure based on waiver for State Farm's failure to submit a proper privilege log are set forth in the attached chart (Exhibit 1), containing a recommendation as to each document for which the privilege has been claimed.

### Billing Records

■■■ In general, billing records are not accorded privileged status unless specific entries contain privileged communications. In *Wesp*, 33 P.3d at 199, n. 15, the Colorado Supreme Court stated:

Certain other types of information communicated between attorney and client are also not protected by the privilege and may be discovered. For instance, an attorney generally may not refuse to answer questions about the identity of a client and fee arrangements.

In *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir.1974), the United States Court of Appeals for the Tenth Circuit considered a response to a subpoena seeking attorney fee related records in a tax matter. The Court held:

Attorney Hodgson made a blanket claim of the privilege. A general refusal to cooperate is not enough. He must normally raise the privilege as to each record sought and each question asked so that at the enforcement hearing the court can rule with specificity.

State Farm has routinely applied the privilege to billing records. In many instances these records run to many pages. The privilege has been asserted in blanket fashion relating to all entries within a given document. Each document varies in length, but the format contains references to date, initials of the provider, time reference in tenths of hours and usually a cryptic one line reference to the activity. The claim of privilege does not address in detail the elements or specific items within these records for which the privilege is claimed, leaving it to the Special Master to try to isolate those entries for which privilege might apply.

Applying the conclusions set forth herein, the Special Master's recommendations regarding disclosure of the billing records are set forth in the attached chart (Exhibit 1), containing a recommendation as to each document for which the privilege has been claimed.

### Miscellaneous Non–Privilege Documents

In numerous instances State Farm has included documents in the privilege log such as fax cover sheets, emails, and other transmission documents that do not, on their face, appear to contain any information that is protected by application of the attorney-client privilege. The Special Master has considered these documents under the principles articulated above and has set forth his recommendations in the attached chart. Exhibit 1.

### Attorney Work Product

■■■ State Farm's assertions of the attorney work product doctrine raise issues that must be considered separately from the attorney-client privilege issues addressed above. *See e.g. Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (attorney-client privilege does not apply to writings that reflect an attorney's mental impressions, conclusions, opinions, or legal theories); *In re Foster*, 188 F.3d 1259, 1272 (10th Cir.1999) (work product is broader and distinct from attorney-client privi-

lege). While in diversity cases state law governs claims of attorney-client privilege, the application of the work product doctrine is governed by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3). *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 (10th Cir.1998).

 The party claiming work product must meet its burden of demonstrating that each of the documents to which work product protection is claimed was in fact prepared in anticipation of litigation. *Grand Jury Proceedings v. U.S.*, 156 F.3d 1038, 1042 (10th Cir.1998); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D.Utah 2002) ("the mere allegation of [the work product doctrine's] application is insufficient."). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product." *Id.* at 304.

 The contours of the application of the work product doctrine were addressed by the Honorable John L. Kane in *Marcin Engineering, LLC, v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 525 (D.Colo. 2003) as follows:

> This doctrine applies to documents and tangible things prepared by a party in anticipation of litigation. It does not apply to facts underlying or contained in such documents. The party resisting discovery bears the burden to timely show that documents constitute work product. Even if the resisting party carries this burden, it nonetheless must produce the work product if the requesting party shows it has substantial need of the material and that it is unable without undue hardship to obtain the substantial equivalent of the material by other means.

(Citations omitted).

Applying these legal standards, the Special Master has reviewed each claim of work product protection and has set forth his recommendations as to each claim in the attached chart. Exhibit 1.

## IV. RULES OF PROFESSIONAL CONDUCT

D.C.COLO.LCivR 83.4, Standards of Professional Responsibility, states as follows:

> ... [T]he rules of professional conduct adopted by the Colorado Supreme Court and in effect on the effective date of these rules are adopted as standards of professional responsibility applicable in this court.

Pursuant to the Order Appointing Special Master, the Special Master has considered the conduct of Giometti, Seaman and Rodman under all of the applicable provisions of the Colorado Rules of Professional Conduct.[5] As stated above, this consideration is separate and apart from the recommendations regarding privilege and work product in this Report. *See* Preamble to the Colorado Rules of Professional Conduct ("these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege.").

In considering these issues, the Special Master has reviewed and gives particular regard to the purpose of these ethical standards, the policies that underlie them and the admonitions and advisements in the "Preamble" and "Scope" sections of the Colorado Rules of Professional Conduct. The Preamble eloquently sets forth the essential function of the rule of law in our society and the critical role of lawyers:

> The continued existence of a free and democratic society depends upon recognition of the concept that justice is based upon the rule of law grounded in respect for the dignity of the individual and each person's capacity through reason for enlightened self-government. Law so grounded makes justice possible, for only through such law does the dignity of the individual attain respect and protection. Without it, individual rights become subject to unrestrained power, respect for law is destroyed, and rational self-government is impossible.

---

5. *See also* CBA Ethics Opinion 91: "Ethical Duties of Attorney Selected by Insurer to Represent Insured," adopted 1/16/93, ("A lawyer retained by a liability insurance carrier to defend a claim against the company's insured must represent the insured with undivided fidelity ...."), supplementing Ethics Opinion 43: "Duty to Insured," 12/13/69; Addendum Issued 1995.

Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.

The Special Master also notes, as set forth in the Scope, the significant distinction throughout the Rules between the Rules that are imperative, cast in the terms "shall" or "shall not," and those that are permissive, generally cast in the term "may." The permissive provisions define areas under the Rules of Professional Conduct in which lawyers have discretion, and the imperative provisions define proper and improper conduct for purposes of professional discipline.

The Special Master is bound by the Code of Conduct for United States Judge. *See* 1–17B(1). Pursuant to Canon 3B(3) of the Code: "A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer."

The Special Master views his task to be that of identifying any rules of the Colorado Rules of Professional Conduct with respect to which, in his judgment, there is a substantial question as to whether the conduct at issue may have violated mandatory professional responsibilities. The limited purpose of this undertaking is to aid the Court to determine whether the Court should further consider any ethical issues that may warrant action. For guidance in undertaking this task, the Special Master looks to Rule 8.3, Reporting Professional Misconduct. That Rule states:

(a) A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate professional authority.[6]

Further, addressing the attorney's duty of candor in *In re DeRose*, 55 P.3d 126, 131 (Colo.2002), the Colorado Supreme Court stated as follows:

Attorneys must adhere to high moral and ethical standards. Truthfulness, honesty, and candor are core values of the legal profession. Lawyers serve our system of justice as officers of the court, and if lawyers are dishonest, then there is a perception that the system must also be dishonest. Attorney misconduct perpetuates the public's misperception of the legal profession and breaches the public and professional trust.

(Citations omitted).

In this same vein, in *People v. Costa*, 56 P.3d 130, 135 (Colo.O.P.D.J.2002), the Colorado Supreme Court stated:

An attorney's misrepresentation of material facts to a court with the aim of benefitting himself or others to the detriment of his adverse party cannot be tolerated under an adversary system which depends upon the honesty of its officers to render fair and just decisions. Judicial officers, members of the profession and the public at large must be able to rely upon the truthfulness of an attorney's statements to the court. Confidence in the truth-seeking process engendered in our system of justice cannot exist absent such reliance.

In making the determination whether a "substantial question" is presented, the Special Master notes that the Comment to Rule 8.3 does not set forth the quantum of proof necessary to meet this standard, but instead states:

... A measure of judgment is ... required in complying with the provisions of this rule. The term 'substantial' refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.

The Committee Comment to Rule 8.3 does, however, provide guidance as to the quantum of proof necessary for an attorney's "knowl-

---

**6.** This Rule imposes a reporting obligation on the Special Master, who is an attorney licensed to practice in Colorado. The Special Master considers that the "appropriate professional authori- ty" under the circumstances of this case is the Court, for the purpose of aiding the Court to determine whether further action is required.

edge" that gives rise to a reporting obligation. The Committee Comment states:

> In recommending this rule, the Committee adopted the definition of knowledge contained in Restatement of Restitution, 10, Comment (d) (1937), similarly adopted in Colorado Bar Association Ethics Committee Opinion 64 (April 23, 1983) 'Knowledge means no substantial doubt.'

With these legal principles in mind, the Special Master has reviewed the conduct of Giometti, Seaman and Rodman and sets forth his comments as to each of the separate Rules of Professional Conduct that may be implicated.

### Rule 1.1 Competence

> A lawyer *shall* provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

(Emphasis supplied).

The Special Master believes there is a substantial question as to whether Giometti and Seaman provided competent representation to State Farm. In reaching this conclusion, the Special Master has given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that they developed and advised their client to pursue was the perpetration of a fraud.

The Special Master further believes that there is a substantial question as to whether Rodman provided competent representation to Thorne. In reaching this conclusion, the Special Master notes that as a consequence of Rodman's acts and omissions in his representation of Thorne, his client was embroiled in litigation initiated by State Farm for nearly a year and suffered emotional distress.

### Rule 1.2 Scope of Representation

\* \* \*

> (d) A lawyer *shall not* counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Giometti and Seaman both counseled and assisted State Farm to engage in conduct that they knew or should have known to be fraudulent. In reaching this conclusion, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that they developed and advised their client to pursue was the perpetration of a fraud.

The Special Master further believes that there is a substantial question as to whether Rodman violated this rule. While Rodman's client was Thorne, the facts and circumstances support the conclusion that Rodman was acting as State Farm's agent, elevating the interests of State Farm above the interests of his client. In that regard, the record that has been provided to the Special Master supports the conclusion that Rodman assisted State Farm to engage in conduct that Rodman knew or should have known to be fraudulent. In reaching this conclusion, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order.

### Rule 1.4 Communication

\* \* \*

> (b) A lawyer **shall** explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Giometti and Seaman explained to State Farm that the course of action they advised State Farm to take could reasonably be viewed as the perpetration of a fraud. In reaching this conclusion, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that they developed and advised their client to pursue was the perpetration of a fraud.

Further, Rodman admits that he did not explain to Thorne the risks to him and the potential consequences of his entering into the Bashor agreement, and, therefore, the Special Master believes there is a substantial question as to whether this admitted failure to inform the client of these potential consequences violated this Rule.

### Rule 1.7 Conflict of Interest

(a) A lawyer *shall not* represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer *shall not* represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) For the purposes of this Rule, a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Rodman's long relationship with State Farm, including his direct attorney-client relationship with State Farm on a number of matters, with the financial benefits that Rodman received therefrom, materially limited his responsibilities to his other client, Thorne, and whether Rodman elevated the interests of State Farm above the interests of Thorne. In reaching this conclusion, the Special Master notes that Rodman continued to represent Thorne after the Kaudy letter that put him on actual notice of the conflict between the interests of Thorne and State Farm. Even assuming *arguendo* that this conflict was one that could be waived under this Rule, there is no dispute that Rodman did not obtain Thorne's informed consent to continue with the representation, as required by the Rule.

### Rule 1.8 Conflict of Interest: Prohibited Transactions

\* \* \*

(f) A lawyer *shall not* accept compensation for representing a client from one other than the client unless:

(1) the client consents after consultation;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Rodman's concerns for the interests of State Farm—the payer of his bills—interfered with both his independent professional judgment and his attorney-client relationship with Thorne.

### Rule 1.16 Declining or Termination Representation

(a) Except as stated in paragraph (c), a lawyer *shall not* represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the rules of professional conduct or other law;

\* \* \*

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Giometti, Seaman and Rodman all knew or should have known that their conduct in pursuing the strategy that they developed would result in the violation of the Rules, as set forth herein,

and the perpetration of a fraud, as found by Judge Perricone.

## Rule 2.1 Advisor

In representing a client, a lawyer *shall* exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation. In a matter involving or expected to involve litigation, a lawyer should advise the client of alternative forms of dispute resolution which might reasonably be pursued to attempt to resolve the legal dispute or to reach the legal objective sought.

(Emphasis supplied).

The Special Master believes there is a substantial question as to whether Rodman violated this Rule by failing to exercise independent professional judgment and render candid advice to Thorne. The Special Master further believes there is a substantial question as to whether Rodman's conduct in his representation of Thorne was materially affected by his prior and ongoing relationship with State Farm.

## Rule 3.1 Meritorious Claims and Contentions

A lawyer *shall not* bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law . . .

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Seaman and Giometti violated this Rule by the filing of the declaratory judgment action. In reaching this conclusion, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that they developed and advised their client to pursue was the perpetration of a fraud.

## Rule 3.3 Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.

\* \* \*

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Rodman violated Rule 3.3 in filing the stipulation for dismissal in the state court action, knowing that his client and Lee had not been informed of material facts before they entered into the Bashor agreement.

Further, the Special Master believes that there is a substantial question as to whether Seaman and Giometti violated this Rule in the filing of the declaratory judgment action and in their conduct in that action up through the withdrawal of their motion for partial summary judgment and their withdrawal as counsel. In reaching these conclusions, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that these attorneys developed and pursued was the perpetration of a fraud.

## Rule 3.4 Fairness to Opposing Counsel

A lawyer *shall not:*

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

\* \* \*

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative of a client or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Rodman unlawfully obstructed Lee's access to information that she needed to reasonably determine whether she should enter into the Bashor agreement. In reaching these conclusions, the Special Master has again given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that these attorneys developed and pursued was the perpetration of a fraud.

## Rule 4.1 Truthfulness in Statements to Others

In the course of representing a client a lawyer *shall not* knowingly:

(a) make a false or misleading statement of fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

(Emphasis supplied).

The Special Master believes that there is a substantial question as to whether Seaman, Giometti and Rodman violated this Rule in their actions and omissions in connection with the presentation of the Bashor agreement to both Lee and Thorne. Again, in reaching these conclusions, the Special Master has given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that these attorneys developed and pursued was the perpetration of a fraud.

## Rule 5.4 Professional Independence of a Lawyer

* * *

(c) A lawyer *shall not* permit a person who recommends, employs or pays the lawyer to render legal services for another to direct or regulate the lawyer's profes-

sional judgment in rendering such legal services.

(Emphasis supplied).

Again, as set forth above, the Special Master believes that there is a substantial question as to whether Rodman's concerns for the interests of State Farm—the payer of his bills—interfered with his independent professional judgment in representing Thorne.

## Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the act of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

* * *

(d) engage in conduct that is prejudicial to the administration of justice;

(g) engage in conduct which violates accepted standards of legal ethics; or

(h) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

(Emphasis supplied).

As set forth above, the Special Master believes that there is a substantial question as to whether Seaman, Giometti and Rodman engaged in misconduct within the meaning of this Rule. Again, in reaching these conclusions, the Special Master has given great weight to the opinion letter of Mr. Laugesen and to Judge Perricone's Order finding that the strategy that these attorneys developed and pursued was the perpetration of a fraud.

## V. *RECOMMENDATIONS*

In applying the findings and conclusions enumerated above, the Special Master has reviewed each of the documents for which privilege is claimed. The chart attached as Exhibit 1 is a copy of the privilege log submitted by State Farm, with a column to

denote the Special Master's recommendation that the subject document should be disclosed for any of the following grounds: the crime-fraud exception (CFE), the "at issue" waiver (AI), and/or insufficient description (ID). Alternatively, a recommendation that the subject document should not be disclosed is identified as privileged (P).

Dated June 4, 2007.

**EXHIBIT**

## EXHIBIT 1 to SPECIAL MASTER'S REPORT AND RECOMMENDATIONS OF JUNE 4, 2007

### Lee v. State Farm

### ATTORNEY/CLIENT AND WORK PRODUCT
### *REVISED* PRIVILEGE LOG
### SEAMAN, GIOMETTI & MURPHY, P.C. FILES

| DOCUMENT NUMBER | BATES NUMBER (SEAMAN) | NATURE OF DOCUMENT, COMMUNICATION OR OTHER MATERIAL | DATE OF ORIGIN | REASON FOR NOT PRODUCING OR NOT DISCLOSING | CONTENTS PRIVILEGED/NON |
|---|---|---|---|---|---|
| 1. | 0001-0002 | Letter from Tom Seaman, to Jon Sands enclosing Seaman, Giometti, & Murphy, P.C. (SGM) billing statements | 07/22/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; CFE & ID |

| | | | | Disclose: |
|---|---|---|---|---|
| 2. | 0012- 0070 | SGM Billing Statements | 07/21/05; 11/02/04; 08/31/04; 05/31/04; 02/29/04; 08/31/03; 06/30/03; 04/30/03; 02/28/03; 01/31/03; 12/31/02; 11/30/02; 10/31/02; 08/31/02; 07/31/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives. Redacted 07/31/02 statement (6/17/02 through 07/30/02) has been produced – see Bates Nos. 0007 - 0011. | Disclose: ID, AI & ID |
| 3. | 0079-0080 | Fax Cover Sheets from Greg Giometti to Steve Baird, Auto Team Manager | 08/13/02 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | Disclose: ID |

| | | | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | Disclose; ID |
|---|---|---|---|---|
| 4. | SGM bcc pages to State Farm representatives and/or legal counsel attached to miscellaneous correspondence from SGM to third parties | Multiple dates after 09/17/02 | | |

0087; 0165; 0187; 0197; 0201; 0324; 0327; 0334; 0339; 0362; 0364; 0415; 0431; 0478; 0492; 0497; 0510; 0573; 0590; 0593; 0622; 0628; 0647; 0681; 0694; 0711; 0758; 0768; 0785; 0794; 0896; 0929; 0977; 0993; 1102; 1162; 1314; 1331; 1411; 1490; 1642; 1644; *1681*; 1710; 1714; 1753; 1761; 1763; 1765; 1841; *1853*; 1855; 1858; 1864;

| No. | Bates | Description | Date | Privilege | Disposition |
|---|---|---|---|---|---|
| 5. | 0091-0098 | Letter from Greg Giometti to Dave Eaton, Auto Claim Consultant, re: status of litigation and fax cover sheets | 08/07/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI |
| 6. | 0105-0116 | Letter from Greg Giometti to Dave Eaton re: status of litigation and legal opinion | 07/19/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 7. | 0117-0131 | Letter from Greg Giometti to Dave Eaton re: status of litigation and legal opinion and fax cover sheets | 07/17/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & AI |
| 8. | 0136-0138 | Fax Cover Sheet from Tom Seaman to Dave Eaton and Brian Arakaki, Auto Section Manager | 07/15/02 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | <u>Disclose;</u> ID |
| 9. | 0169-0171; 0997-1001; 1031-1033; 1757-1759; 1984-1986; 2032-2034; 2075; 2149; 2151-2152; 2387-2389; | Fax Cover Sheets from SGM to State Farm legal counsel and/or State Farm representatives | Multiple dates after 09/17/02 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | <u>Disclose;</u> ID |

| | | | | | |
|---|---|---|---|---|---|
| 10. | 0139-0158 | Fax Cover Sheet from Steve Baird to Greg Giometti and attached documents | 07/11/02 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID & CFE |
| 11. | 0159-0162 | Fax Cover Sheet from Steve Baird to Greg Giometti and attached documents | 07/11/02 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; CFE & ID |
| 12. | 0180-0184 | Letter from Tom Seaman to Dave Eaton re: status of litigation and fax cover sheets | 07/09/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 13. | 0192-0194 | Letter from Tom Seaman to Dave Eaton re: status of litigation | 07/03/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 14. | 0345-0348 | Fax Cover Sheet from Toni Hilton, secretary for Brian Arakaki, to Mary Frangis with attached documents | 10/14/02 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 15. | 0351 | E-Mail from Tom Seaman to Richard Schulkins, Counsel for State Farm | 10/11/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 16. | 0359 | E-Mail from Richard Schulkins to Michele Mancias, Attorney for State Farm and copied to Tom Seaman | 10/11/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 17. | 0360 | E-Mail from Richard Schulkins to Tom Seaman | 10/11/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 18. | 0365-0376 | Fax Cover Sheet from Tom Seaman to Richard Schulkins, Michelle Mancias and Brian Arakaki with attached documents | 10/09/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE |

| | | | | | |
|---|---|---|---|---|---|
| 19. | 0377-0390 | Fax Cover Sheet from Tom Seaman to Richard Schulkins, Michelle Mancias and Brian Arakaki with attached documents | 10/09/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE |
| 20. | 0391-0400 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Brian Arakaki with attached documents | 10/08/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | Disclose: CFE & AI |
|---|---|---|---|---|---|
| 21. | 0401-0405 | Fax Cover Sheet from Richard Schulkins to Tom Seaman with attached documents | 10/07/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & AI |
| 22. | 0406-0407 | E-Mail from Richard Schulkins to Tom Seaman | 10/07/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 23. | 0408-0409 | Fax Cover Sheet from Tom Seaman to Richard Schulkins, Michelle Mancias and Brian Arakaki | 10/04/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 24. | 0410-0412 | Fax Cover Sheet from Tom Seaman to Richard Schulkins, Michelle Mancias and Brian Arakaki | 10/04/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 25. | 0416 | Letter from Greg Giometti to Richard Schulkins | 10/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 26. | 0420-0421 | E-Mail from Richard Schulkins to State Farm attorneys | 10/01/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and is unrelated to this case. | Not Disclosed; P |

| 27. | 0424 | Letter from Tom Seaman to Richard Schulkins | 09/30/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 28. | 0428 | E-Mail from Richard Schulkins to Brian Arakaki and copied to Tom Seaman | 09/30/02 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | Not Disclosed; P |
| 29. | 0432-0439 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Brian Arakaki with attached documents | 09/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE |

| | | | | | |
|---|---|---|---|---|---|
| 30. | 0440-0447 | Letter from Tom Seaman to Richard Schulkins re: status of litigation with attached FedEx receipt | 09/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 31. | 0452-0453 | Letter from Tom Seaman to Richard Schulkins re: status of litigation | 09/26/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 32. | 0464 | Letter from Tom Seaman to Richard Schulkins | 09/24/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 33. | 0468-0469 | Letter from Tom Seaman to Richard Schulkins re: status of litigation | 09/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI |
| 34. | 0482 | Letter from Tom Seaman to Richard Schulkins | 09/19/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 35. | 0483-0484 | Letter from Tom Seaman to Richard Schulkins re: status of litigation | 09/18/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: ID |

| | | | | | |
|---|---|---|---|---|---|
| 36. | 0486-0488 | Fax Cover Sheet from Tom Seaman to Richard Schulkins re: status of litigation | 09/17/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |
| 37. | 0498-0502 | Fax Memo from Richard Schulkins to Greg Giometti with attached documents | 09/04/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI |

| | | | | | |
|---|---|---|---|---|---|
| 38. | 0503-0504 | Letter from Tom Seaman to Richard Schulkins re: status of litigation | 09/04/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 39. | 0505 | Letter from Tom Seaman to Richard Schulkins | 09/03/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 40. | 0511-0512 | Fax Memo from Richard Schulkins to Greg Giometti | 08/22/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI |

| | | | | |
|---|---|---|---|---|
| 41. | 0513-0519 | Fax Cover Sheet from Greg Giometti to Richard Schulkins with attached documents and fax cover sheets | 08/21/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI |
| 42. | 0520-0524 | Letter from Greg Giometti to Richard Schulkins re: status of litigation and FedEx receipt | 08/16/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 43. | 0525-0531 | Fax Cover Sheet from Karl Chambers to Dave Eaton and Brian Arakaki with attached documents | 08/16/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI |
| 44. | 0533 | E-Mail from Brian Arakaki to Richard Schulkins and copied to Tom Seaman and Jon Sands | 01/31/03 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID |
| 45. | 0534 | E-Mail from Richard Schulkins to Dave Eaton and copied to Tom Seaman, Jon Sands and Brian Arakaki | 01/31/03 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 46. | 0535-0542 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached documents and fax cover sheets | 01/31/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 47. | 0546-0547 | Fax Cover Sheet from Terri Taylor, secretary for Tom Seaman, to Richard Schulkins | 01/29/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 48. | 0548-0553 | Fax Cover Sheet from Steve Baird to Tom Seaman with attached documents | 01/29/03 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 49. | 0561-0565 | Letter from Tom Seaman to Jon Sands re: status of litigation with attached fax cover sheets | 01/27/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 50. | 0566-0567 | Fax Cover Sheet from Greg Giometti to Richard Schulkins | 01/27/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 51. | 0568-0571 | Fax Cover Sheet from Greg Giometti to Richard Schulkins with attached documents and fax cover sheets | 01/27/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 52. | 0574 | Fax Cover Sheet from Joseph Nistico, Nistico & Crouch, attorney representing State Farm, to David Murphy | 01/24/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 53. | 0575-0579 | Fax Cover Sheet from Ross Pulkrabek, Faegre & Benson, attorney representing State Farm, to Tom Seaman with attached documents | 01/24/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 54. | 0580-0583 | Fax Cover Sheet from David Murphy to Joseph Nistico with attached documents and fax cover sheets | 01/24/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 55. | 0633-0634 | Fax Cover Sheet from Greg Giometti to Richard Schulkins | 01/21/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| No. | Bates | Description | Date | Privilege | Disposition |
|---|---|---|---|---|---|
| 56. | 0635-0636 | Fax Cover Sheet from Michelle Mancias to Greg Giometti with attached correspondence | 01/20/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 57. | 0640 | Letter from Michelle Mancias to Greg Giometti | 01/20/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 58. | 0641-0644 | Fax Cover Sheet from Michelle Mancias to Greg Giometti with attached documents | 01/20/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; AI |

| | | | | | |
|---|---|---|---|---|---|
| 59. | 0645 | E-Mail from Richard Schulkins to Greg Giometti | 01/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 60. | 0664 | Letter from Greg Giometti to Michelle Mancias | 01/17/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 61. | 0668-0679 | Fax Memo from Richard Schulkins to Greg Giometti with attached documents | 01/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 62. | 0701-0704 | Fax Cover Sheet from Terri for Tom Seaman to Steve Baird with attached documents and fax cover sheets | 01/14/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose: ID |
| 63. | 0713-0718 | Fax Cover Sheet from Greg Giometti to Steve Baird with attached documents and fax cover sheets | 01/10/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose: AI |
| 64. | 0719-0724 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached fax cover sheets | 01/10/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE, AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 65. | 0728-0735 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached fax cover sheets | 01/10/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |
| 66. | 0748 | Letter from Steve Baird to Greg Giometti | 01/06/03 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID |
| 67. | 0749 | Letter from Tom Seaman to Richard Schulkins | 01/08/02 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 68. | 0750-0751 | Letter from Tom Seaman to Steve Baird | 01/08/02 | Attorney/Client Privilege as it is a communication from State Farm's legal counsel to State Farm representatives. | Disclose; ID |
| 69. | 0752-0753 | E-Mail from Marlene Beliveau, Faegre & Benson, to Paula O'Konski, secretary for Greg Giometti | 01/08/03 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 70. | 0755 | Letter from Steve Baird to Tom Seaman | 01/06/03 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID |
| 71. | 0761-0762 | Letter from Steve Baird to Greg Giometti with attached fax sheet | 01/06/03 | Attorney/Client Privilege as it is a communication from State Farm representatives to State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 72. | 0797-0801 | Fax Cover Sheet from Michelle Mancias to Greg Giometti and Karl Chambers with attached documents | 01/02/02 | Attorney-Client Privilege as it is a communication between State Farm's legal counsel. | Not Disclosed; P |
| 73. | 0802-0806 | Letter from Greg Giometti to Brian Arakaki re: status of litigation with attached fax cover sheets | 01/02/02 | Attorney/Client Privilege and Work Product as it is a communication from State Farm's legal counsel to State Farm representatives. | Not Disclosed; P |
| 74. | 0808-0811 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki with attached fax cover sheets | 03/28/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 75. | 0812-0815 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki with attached fax cover sheets | 03/27/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 76. | 0818-0826 | Fax Cover Sheet from Jon Sands to Tom Seaman with attached documents | 03/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose</u>: ID & AI |
| 77. | 0827-0839 | Fax Cover Sheet from Jon Sands to Tom Seaman with attached documents | 03/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose</u>: ID & AI |

| | | | | | |
|---|---|---|---|---|---|
| 78. | 0840-0847 | Fax Cover Sheet from Jon Sands to Tom Seaman with attached documents | 03/14/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID & AI |
| 79. | 0848-0859 | Letter from Tom Seaman to Jon Sands with attached documents and fax cover sheets | 03/14/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 80. | 0860-0863 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki | 03/11/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose;</u> ID |
| 81. | 0864-0867 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki | 03/10/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose;</u> ID |
| 82. | 0868-0871 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki | 03/06/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose;</u> ID |

722

| | | | | | |
|---|---|---|---|---|---|
| 83. | 0872-0874 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Brian Arakaki | 03/06/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose:</u> ID |
| 84. | 0875-0878 | Fax Cover Sheet from Tom Seaman to Jon Sands, Richard Schulkins and Brian Arakaki | 03/06/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose:</u> ID |
| 85. | 0883-0886 | Fax Cover Sheet from Terri Taylor to Jon Sands, Richard Schulkins and Brian Arakaki | 03/03/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose:</u> ID |

| | | | | | |
|---|---|---|---|---|---|
| 86. | 0891-0894 | Fax Cover Sheet from Tom Seaman to Jon Sands, Richard Schulkins and Brian Arakaki | 02/27/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | <u>Disclose;</u> ID |
| 87. | 0897 | Letter from Kim Sutherland, paralegal for Jon Sands, to Tom Seaman | 02/25/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 88. | 0900-0901 | Fax Cover Sheet from Terri Taylor to Diane, secretary for Richard Schulkins | 02/25/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 89. | 0902 | Letter from Tom Seaman to Richard Schulkins | 02/24/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |

| | | | | | |
|---|---|---|---|---|---|
| 90. | 0907 | E-Mail from Richard Schulkins to Tom Seaman re: status of litigation | 02/21/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 91. | 0908 | E-Mail from Richard Schulkins to Tom Seaman | 02/21/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 92. | 0909-0912 | Letter from Tom Seaman to Jon Sands with attached documents | 02/19/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 93. | 0915-0926 | E-Mail from Jon Sands to Tom Seaman with attached documents and handwritten notes of Tom Seaman | 02/14/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & AI |
| 94. | 0934-0943 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached documents and fax cover sheets | 02/12/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 95. | 0956-0970 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached documents and fax cover sheets | 02/11/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 96. | 0972-0974 | Fax Cover Sheet from Terri Taylor to Richard Schulkins and Jon Sands | 02/10/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| 97. | 0983-0990 | Fax Cover Sheet from Greg Giometti to Richard Schulkins, Jon Sands and Brian Arakaki with attached documents and fax cover sheets | 02/10/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE, AI & ID<br><br>The SM notes that counsel included Bates no.0997-1001 in the materials without including same in the PL. They are hereby; Disclosed; ID |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 98. | 1006-1011 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached documents and fax cover sheets | 02/07/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclosed; ID The SM notes that counsel included Bates nos.1031-1033 in the materials without including same in the PL. They are hereby; Disclosed; ID |
| 99. | 1034-1042 | Fax Cover Sheet from Tom Seaman to Jon Sands and Richard Schulkins with attached documents and fax cover sheets | 02/07/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI & ID |

| | | | | |
|---|---|---|---|---|
| 100. | 1043 | E-Mail from Richard Schulkins to Jon Sands, David Murphy and Tom Seaman | 02/07/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 101. | 1044-1051 | E-Mail from Jon Sands to Richard Schulkins, David Murphy and Tom Seaman with attached documents | 02/07/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

730

| | | | | | |
|---|---|---|---|---|---|
| 102. | 1052-1065 | Fax Cover Sheet from Jon Sands to Tom Seaman with attached documents | 02/06/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 103. | 1066-1072 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached documents and fax cover sheets | 02/06/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | Disclose: |
|---|---|---|---|---|
| 104. | 1073-1079 | E-Mail from Jon Sands to Richard Schulkins, David Murphy and Tom Seaman with attached documents | 02/06/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | AI |
| 105. | 1080-1084 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached documents and fax cover sheets | 02/06/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 106. | 1087-1090 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands re: status of litigation with attached fax cover sheets | 02/05/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u><br>ID |
| 107. | 1091-1093 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached fax cover sheets | 02/05/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u><br>ID |
| 108. | 1094-1096 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands | 02/04/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | 1094<br><u>Not Disclosed;</u><br>P<br><br>1095-1096<br><u>Disclose;</u><br>ID |

| 109. | 1097-1098 | Letter from Greg Giometti to Richard Schulkins | 02/04/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 110. | 1099-1100 | Fax Cover Sheet from Greg Giometti to Richard Schulkins | 02/04/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 111. | 1110 | E-Mail from Richard Schulkins to Tom Seaman and David Murphy | 06/23/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 112. | 1111-1115 | E-Mail from Richard Schulkins to Tom Seaman and David Murphy with attached documents | 06/08/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 113. | 1116-1118 | Fax Cover Sheet from Richard Schulkins to Tom Seaman with attached documents | 04/08/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 114. | 1119 | E-Mail from Richard Schulkins to Tom Seaman | 03/19/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 115. | 1120 | E-Mail from Richard Schulkins to Tom Seaman | 03/19/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> AI |
| 116. | 1122-1123 | Fax Cover Sheet from Tom Seaman to Richard Schulkins | 02/24/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 117. | 1124-1137 | E-Mail from Richard Schulkins to Jon Sands, Tom Seaman and David Murphy with attached documents | 02/20/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |

| | | | | | |
|---|---|---|---|---|---|
| 118. | 1138-1139 | Fax Cover Sheet from Terri Taylor to Richard Schulkins with attached fax cover sheets | 02/17/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 119. | 1140-1141 | Fax Cover Sheet from Tom Seaman to Richard Schulkins with attached fax cover sheets | 02/13/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 120. | 1142-1144 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached fax cover sheets | 02/09/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 121. | 1145-1150 | Letter from Tom Seaman to Richard Schulkins re: status of litigation and attached fax cover sheets | 02/05/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | 1145-1146 <u>Not Disclosed;</u> P<br><br>1147-1150 <u>Disclose;</u> ID |
| 122. | 1151-1153 | Fax Cover Sheet from Terri Taylor to Richard Schulkins and Jon Sands with attached fax cover sheets | 07/29/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 123. | 1154-1156 | Fax Cover Sheet from Terri Taylor to Richard Schulkins and Jon Sands with attached fax cover sheets | 07/21/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 124. | 1157 | E-Mail from Richard Schulkins to Tom Seaman | 07/11/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Not Disclosed;</u> P |

| | | | | | |
|---|---|---|---|---|---|
| 125. | 1158-1161 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached fax cover sheets | 07/08/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 126. | 1163 | E-Mail from Richard Schulkins to Jon Sands | 07/07/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Not Disclosed: P |
| 127. | 1164-1168 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached documents | 07/07/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | 1166-1168 Not Disclosed: P 1164-1165 Disclose: ID |

| | | | | | |
|---|---|---|---|---|---|
| 128. | 1169-1181 | Fax Cover Sheet from Tom Seaman to Brian Arakaki with attached documents and fax cover sheets | 07/07/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 129. | 1182-1197 | Fax Cover Sheet from Tom Seaman to Jon Sands, Richard Schulkins and Brian Arakaki with attached documents and fax cover sheets | 06/30/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 130. | 1198-1200 | Fax Cover Sheet from Terri Taylor to Richard Schulkins and Jon Sands with attached fax cover sheets | 06/26/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 131. | 1201-(1221) *1219* | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 06/19/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |
| 132. | 1220-1221 | Letter from Tom Seaman to Jon Sands | 07/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | Disclose: CFE & AI |
|---|---|---|---|---|---|
| 133. | 1223-1260 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached documents and fax cover sheets | 06/13/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & AI |
| 134. | 1261 | E-Mail from Richard Schulkins to Tom Seaman and Jon Sands | 06/13/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 135. | 1262 | E-Mail from Richard Schulkins to Jon Sands and Tom Seaman | 06/13/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 136. | 1263 | Fax Cover Sheet from Jon Sands to Tom Seaman | 06/13/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 137. | 1265-1267 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached fax cover sheets | 05/16/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 138. | 1268-1270 | Fax Cover Sheet from Terri Taylor to Richard Schulkins and Jon Sands with attached fax cover sheets | 05/15/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 139. | 1272-1288 | Fax Cover Sheet from Jon Sands to Richard Schulkins and Tom Seaman | 05/08/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 140. | 1290-1292 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached fax cover sheets | 05/02/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 141. | 1293-1295 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached fax cover sheets | 05/02/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 142. | 1296-1303 | Fax Cover Sheet from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 05/01/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE |
| 143. | 1304-1312 | Fax Cover Sheet from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 04/30/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & ID |

| | | | | | |
|---|---|---|---|---|---|
| 144. | 1315-1318 | Fax Cover Sheet from Tom Seaman to Jon Sands, Richard Schulkins and Brian Arakaki with attached fax cover sheets | 04/28/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 145. | 1319-1321 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Brian Arakaki with attached fax cover sheets | 04/28/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 146. | 1332-1334 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Brian Arakaki with attached fax cover sheets | 04/15/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

746

| 147. | 1335-1340 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 04/23/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & ID |
| 148. | 1341-1350 | Letter from Tom Seaman to Jon Sands with attached documents | 04/22/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: ID |
| 149. | 1351 | Letter from Kim Sutherland, paralegal for Jon Sands, to Tom Seaman | 04/21/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |

| | | | | | |
|---|---|---|---|---|---|
| 150. | 1354 | E-Mail from Richard Schulkins to Tom Seaman | 04/18/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> CFE & ID |
| 151. | 1355-1362 | Letter from Tom Seaman to Richard Schulkins and Jon Sands re: status of litigation with attached fax cover sheets | 04/17/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & ID |
| 152. | 1363-1372 | Fax Cover Sheet from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 04/16/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & ID |

| | | | | | |
|---|---|---|---|---|---|
| 153. | 1373-1387 | Fax Cover Sheet from Tom Seaman to Richard Schulkins and Jon Sands with attached documents and fax cover sheets | 04/09/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & ID |
| 154. | 1412-1417 | Fax Cover Sheet from Tom Seaman to Jon Sands and Richard Schulkins with attached documents and fax cover sheets | 05/20/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 155. | 1418 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman | 05/17/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |

| 156. | 1419 | E-Mail from Richard Schulkins to Tom Seaman and Jon Sands | 05/17/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Not Disclosed; P |
| --- | --- | --- | --- | --- | --- |
| 157. | 1420-1421 | E-Mail from Jon Sands to Richard Schulkins, Tom Seaman, Susan Singleton, Auto Section Manager, and Dave Eaton re: status of litigation | 05/16/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE |

| | | | | | Disclose: CFE & ID |
|---|---|---|---|---|---|
| 158. | 1422-1434 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman with attached documents | 05/13/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & ID |
| 159. | 1435-1461 | E-Mail from Jon Sands to Richard Schulkins, Tom Seaman and Dave Eaton with attached documents | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | Not Disclosed;<br>P |
|---|---|---|---|---|
| 160. | 1462-1465 | E-Mail from Jon Sands to Richard Schulkins, Dave Eaton and Tom Seaman with attached documents | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. |
| 161. | 1466-1467 | E-Mail from Diane Adams, secretary for Richard Schulkins, to Richard Schulkins, Carley Cross, paralegal for Jon Sands, Jon Sands and Terri Taylor | 05/04/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. Disclose;<br>ID |

| | | | | | |
|---|---|---|---|---|---|
| 162. | 1468 | E-Mail from Richard Schulkins to Tom Seaman, Dave Eaton and Jon Sands | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 163. | 1469-1478 | Fax Cover Sheet from Tom Seaman to Jon Sands with attached documents and fax cover sheets | 05/03/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 164. | 1479 | E-Mail from Diane Adams to Terri Taylor | 05/03/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| 165. | 1480 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman | 04/29/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
|---|---|---|---|---|---|
| 166. | 1481 | E-Mail from Richard Schulkins to Jon Sands and Tom Seaman | 04/28/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 167. | 1484-1486 | E-Mail from Richard Schulkins to Tom Seaman and Jon Sands with attached documents | 12/10/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 168. | 1487-1488 | Fax Cover Sheet from Tom Seaman to Richard Schulkins with attached fax cover sheets | 12/10/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 169. | 1491-1492 | Fax Cover Sheet from Tom Seaman to Richard Schulkins with attached fax cover sheets | 08/09/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | Not Disclosed; P |
|---|---|---|---|---|---|
| 170. | 1493-1498 | Letter from Tom Seaman to Richard Schulkins re: status of litigation with attached fax cover sheets | 08/02/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | |
| 171. | 1499-1501 | Letter from Tom Seaman to Marilyn Smith, Auto Team Manager, re: status of litigation *and copied to Jon Sands, Brian Arakaki and Richard Schulkins* | 08/02/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| 172. | 1502 | Letter from David Murphy to Brian Arakaki, Steve Baird and Richard Schulkins | 07/26/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 173. | 1504 | Letter from David Murphy to Brian Arakaki, Steve Baird and Richard Schulkins | 07/14/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 174. | 1506 | E-Mail from David Murphy to Richard Schulkins and Tom Seaman | 07/14/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 175. | 1507-1518 | E-Mail from David Murphy to Richard Schulkins, Jon Sands and Tom Seaman with attached documents | 07/12/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 176. | 1519-1520 | E-Mail from Richard Schulkins to David Murphy | 07/07/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| 177. | 1521-1522 | Fax Cover Sheet from David Murphy to Richard Schulkins, Jon Sands and Brian Arakaki | 07/06/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 178. | 1523-1524 | Fax Cover Sheet from David Murphy to Richard Schulkins, Jon Sands and Brian Arakaki | 07/06/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 179. | 1525-1538 | Letter from Carley Cross to Dave Murphy with attached documents | 07/02/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 180. | 1539-1601 | Letter from Carley Cross to Tom Seaman with attached documents | 07/02/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 181. | 1602-1607 | Fax Cover Sheet from Dave Murphy to Jon Sands with attached documents | 07/02/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 182. | 1610 | Letter from Tom Seaman to Richard Schulkins | 11/15/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 183. | 1615-1640 | Unredacted Activity Log Notes from Thorne Claim File attached to letter from Kathryn Phillips-Schwab, paralegal for Robert Baldwin, to Tom Seaman dated 11/13/02 | Various | Attorney/Client Privilege as they include communications between Mr. Thorne and his attorney, John Rodman. | <u>Disclose;</u> ID |
| 184. | 1645-1647 | Fax Cover Sheet from Greg Giometti to Richard Schulkins with attached fax cover sheets | 11/14/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |

| 185. | 1648-1651 | Fax Memo from Richard Schulkins to Eric Miller, Auto Section Manager, and Greg Giometti | 11/14/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
|------|-----------|---|----------|---|---|
| 186. | 1652-1654 | Fax Memo from Richard Schulkins to Greg Giometti | 11/14/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 187. | 1655 | Fax Memo from Richard Schulkins to Greg Giometti | 11/14/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |
| 188. | 1656-1673 | Fax Cover Sheet from Greg Giometti to Richard Schulkins with attached documents | 11/13/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> ID |

| | | | | |
|---|---|---|---|---|
| 189. | 1674-1675 | Fax Memo from Richard Schulkins to Greg Giometti | 11/12/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |
| 190. | 1676-(1681) *1678* | Fax Memo from Richard Schulkins to Greg Giometti | 11/12/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI & ID |

| | | | Not Disclosed; P |
|---|---|---|---|
| 191. | 1722-1725 | Fax Cover Sheet from Tom Seaman to Dyann Schieltz, Auto Claim Representative, with attached documents and fax cover sheets | 11/08/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. |
| 192. | 1726-1727 | Fax Cover Sheet from Tom Seaman to Dyann Schieltz and fax cover sheets | 11/06/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

| 193. | 1731-1746 | Letter from Greg Giometti to Richard Schulkins with attached documents | 11/06/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI & ID |
|------|-----------|------|----------|------|------|
| 194. | 1767-1770 | Fax Cover Sheet from Tom Seaman to Richard Schulkins, Brian Arakaki and Michelle Mancias with attached fax cover sheets | 10/31/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 195. | 1772-1785 | Fax Cover Sheet from Karl Chambers to Richard Schulkins with attached documents and fax cover sheets | 10/28/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 196. | 1786-1794 | Fax Memo from Richard Schulkins to Karl Chambers with attached document | 10/28/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 197. | 1795-1796 | Fax Memo from Richard Schulkins to Karl Chambers with attached documents | 10/26/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |
| 198.. | (1799) *1797 -1798* | Fax Memo from Richard Schulkins to Karl Chambers with attached documents | 10/26/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

| | | | | | |
|---|---|---|---|---|---|
| 199. | 1799 | E-Mail from Richard Schulkins to Tom Seaman | 10/26/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 200. | 1800–1813 | Fax Cover Sheet from Karl Chambers to Richard Schulkins with attached documents | 10/25/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI & ID |

| | | | | |
|---|---|---|---|---|
| 201. | 1814 | E-Mail from Richard Schulkins to Tom Seaman and David Murphy | 10/24/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 202. | 1819-1820 | Letter from Tom Seaman to Richard Schulkins re: status of litigation | 10/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 203. | 1821-1826 | Letter from Tom Seaman to Susan West, Auto Claim Representative | 10/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 204. | 1827-1832 | Letter from Tom Seaman to Dyann Schieltz | 10/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 205. | 1833-1838 | Letter from Tom Seaman to Deb Plouffe, Auto Claim Representative | 10/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 206. | 1846-1853 | Letter from Tom Seaman to Steve Baird | 10/22/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 207. | 1870-1873 | E-Mail from Richard Schulkins to Tom Seaman with attached documents | 10/20/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE, AI |
| 208. | 1874 | Letter from Tom Seaman to Richard Schulkins | 10/18/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | Disclose: |
|---|---|---|---|---|---|
| 209. | 1875-1882 | Letter from Tom Seaman to Richard Schulkins, Brian Arakaki and Michelle Mancias with attached documents | 10/18/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI & ID |
| 210. | 1886 | Fax Memo from Richard Schulkins to Greg Giometti | 10/16/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 211. | 1893-(1929) *1928* | Fax Cover Sheet from Michelle Mancias to Karl Chambers with attached documents | 12/10/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 212. | 1944-1948 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached fax cover sheets | 12/05/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 213. | 1949-1950 | Fax Cover Sheet from Karl Chambers to Michelle Mancias with attached fax cover sheets | 12/06/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 214. | 1951-1954 | Fax Cover Sheet from Greg Giometti to Richard Schulkins, Michelle Mancias and Brian Arakaki with attached fax cover sheets | 12/05/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 215. | 1961-1968 | Letter from Karl Chambers to Michelle Mancias with attached fax cover sheets | 12/05/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 216. | 1969-1971 | Fax Cover Sheet from Greg Giometti to Richard Schulkins and Brian Arakaki with attached fax cover sheets | 12/04/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 217. | 1992-1993 | Fax Cover Sheet from Terri Taylor to Diane, secretary for Richard Schulkins with attached fax cover sheets | 12/04/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 218. | 1998-2003 | Letter from Tom Seaman to Deb Plouffe with attached documents | 12/03/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 219. | 2004-2008 | Letter from Tom Seaman to Susan West with attached documents and fax cover sheets | 12/03/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 220. | 2009-(2018) *2013* | Letter from Tom Seaman to Dyann Schieltz with attached documents | 12/03/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

| | | | |
|---|---|---|---|
| 221. | 2014 – 2018 | Letter from Tom Seaman to Steve Baird with attached documents | 12/03/02 | *Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives.* | Disclose; ID |
| 222. | 2019 | Letter from Greg Giometti to Richard Schulkins | 12/03/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 223. | 2040-2041 | Fax Cover Sheet from Karl Chambers to Richard Schulkins | 12/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 224. | 2044 | Fax Memo from Richard Schulkins to Greg Giometti and Tom Seaman | 12/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 225. | 2045 | Fax Memo from Richard Schulkins to Karl Chambers | 12/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 226. | 2052-2053 | Fax Cover Sheet from Greg Giometti to Richard Schulkins | 11/27/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 227. | 2056-2064 | Fax Memo from Richard Schulkins to Greg Giometti and Tom Seaman with attached documents | 11/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 228. | 2075 | Fax Cover Sheet from Greg Giometti to Richard Schulkins | 11/26/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 229. | 2079 | Fax Memo from Richard Schulkins to Tom Seaman | 11/25/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 230. | 2084-2089 | Fax Memo from Richard Schulkins to Karl Chambers, Greg Giometti and Tom Seaman with attached documents | 11/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI & ID |
| 231. | 2090-2094 | Fax Memo from Richard Schulkins to Karl Chambers, Greg Giometti and Tom Seaman with attached documents | 11/23/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 232. | 2098-2099 | Letter from Tom Seaman to Richard Schulkins with attached documents | 11/21/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 233. | 2105-2112 | Letter from Karl Chambers to Richard Schulkins with attached documents and fax cover sheets | 11/19/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | 2105-2106 <u>Not Disclosed;</u> P<br><br>2107-2112 <u>Disclose;</u> ID |
| 234. | 2113-2119 | Fax Memo from Richard Schulkins to Karl Chambers with attached documents | 11/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> ID |

| | | | | | Not Disclosed; P |
|---|---|---|---|---|---|
| 235. | 2120-2121 | Fax Memo from Richard Schulkins to Tom Seaman and Greg Giometti | 11/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | |
| 236. | 2126-2127 | Fax Cover Sheet from Terri Taylor to Richard Schulkins with attached fax cover sheets | 11/18/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 237. | 2128-2129 | Fax Cover Sheet from Tom Seaman to Michael McCarthy, Faegre & Benson, attorney for State Farm | 11/18/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| 238. | 2133-2138 | Letter from Greg Giometti to Richard Schulkins with attached documents and fax cover sheets | 12/31/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
|------|-----------|---------------------------------------------------------------------------------------------|----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|
| 239. | 2139-2143 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached fax cover sheets | 12/31/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | 2139-2140 Not Disclosed; P 2141-2143 Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 240. | 2144 | E-Mail from Michael McCarthy to David Murphy and Joseph Nistico re: litigation | 12/31/01 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose</u>; ID |
| 241. | 2160-2161 | Letter from David Murphy to Joseph Nistico with attached FedEx receipt | 12/30/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose</u>; ID |
| 242. | 2162-2186 | Letter from Greg Giometti to Richard Schulkins with attached documents and fax cover sheets | 12/30/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose</u>; ID |

| | | | | | |
|---|---|---|---|---|---|
| 243. | 2189 | E-Mail from Joseph Nistico to David Murphy | 12/30/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 244. | 2192 | E-Mail from Richard Schulkins to Brian Arakaki and copied to Dave Eaton, Jon Sands, Tom Seaman and Kent Gorsuch | 12/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE |

| | | | | Disclose: |
|---|---|---|---|---|
| 245. | 2193-2215 | Fax Cover Sheet from Karl Chambers to Richard Schulkins with attached documents and fax cover sheets | 12/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI & ID |
| 246. | 2216-2240 | Fax Memo from Richard Schulkins to Karl Chambers and Greg Giometti with attached documents | 12/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 247. | 2241-2242 | Letter from Richard Schulkins to Jon Sands | 12/21/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI & ID |
| 248. | 2243-2248 | Letter from Karl Chambers to Richard Schulkins with attached documents and fax cover sheets | 12/26/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: ID |

| | | | | | |
|---|---|---|---|---|---|
| 249. | 2261 | Fax Memo from Richard Schulkins to Karl Chambers | 12/24/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |
| 250. | 2262-2266 | Fax Memo from Richard Schulkins to Greg Giometti and Karl Chambers with attached documents | 12/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: CFE & AI |

| | | | | | Not Disclosed; P |
|---|---|---|---|---|---|
| 251. | 2293-2297 | E-Mail from Richard Schulkins to Tom Seaman with attached documents | 12/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 252. | 2298-2299 | Fax Memo from Richard Schulkins to Karl Chambers | 12/20/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | |

| | | | | Not Disclosed: P |
|---|---|---|---|---|
| 253. | 2304-2311 | Fax Cover Sheet from Greg Giometti to Richard Schulkins with attached documents and fax cover sheets | 12/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 254. | 2312-2315 | Fax Cover Sheet from Greg Giometti to Dave Eaton and Brian Arakaki with attached documents and fax cover sheets | 12/18/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. Disclose: AI & ID |

| | | | | |
|---|---|---|---|---|
| 255. | 2316-2325 | Letter from Greg Giometti to Dave Eaton and Brian Arakaki re: status of litigation with attached Fax Cover Sheets | 12/18/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & AI |
| 256. | 2332-2350 | Letter from Tom Seaman to Richard Schulkins with attached documents and fax cover sheets | 12/16/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> ID |

| | | | | | |
|---|---|---|---|---|---|
| 257. | 2354-2357 | Fax Cover Sheet from Sam Linsenmaier, paralegal for Greg Giometti, to Steve Baird with attached documents and fax cover sheets | 12/13/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |
| 258. | 2370-2374 | Letter from Greg Giometti to Richard Schulkins with attached Fax Cover Sheets | 12/12/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 259. | 2395-2423 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached documents and fax cover sheets | 12/11/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 260. | 2435 | Handwritten notes of Tom Seaman re: conversation with Jon Sands | 05/31/05 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 261. | 2436-2442 | Handwritten notes of Tom Seaman re: status of litigation | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | |
|---|---|---|---|
| 262. | 2443-2461 | Handwritten notes of Tom Seaman re: John Rodman deposition | 12/18/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 263. | 2462-2463 | Handwritten notes of David Murphy re: conference with Richard Schulkins | 05/20/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 264. | 2464-2465 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman and copied to David Murphy | 05/17/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 265. | 2466 | E-Mail from Jon Sands to Tom Seaman and Richard Schulkins and copied to David Murphy | 05/17/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 266. | 2467-2468 | E-Mail from Jon Sands to Richard Schulkins, Tom Seaman, Susan Singleton and Dave Eaton and copied to David Murphy | 05/16/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 267. | 2469 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman and copied to David Murphy | 05/16/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | Disclose: |
|---|---|---|---|---|---|
| 268. | 2470-2471 | E-Mail from Jon Sands to Richard Schulkins, Tom Seaman and Dave Eaton and copied to David Murphy | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | ID |
| 269. | 2472-2473 | E-Mail from Jon Sands to Richard Schulkins, Tom Seaman and Dave Eaton and copied to David Murphy | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 270. | 2474 | E-Mail from Richard Schulkins to Tom Seaman, Dave Eaton and Jon Sands and copied to David Murphy | 05/04/05 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 271. | 2475 | Handwritten notes of David Murphy re: conference call with Richard Schulkins, Tom Seaman, Dave Eaton and Jon Sands | 12/29/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | Disclose; ID / Not Disclosed; |
|---|---|---|---|---|---|
| 272. | 2477-2525 | Case law | | Work Product as it pertains to communication between State Farm's legal counsel and State Farm representatives and consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 273. | 2526 | Handwritten notes of David Murphy re: conference call with Richard Schulkins, Jon Sands, Tom Seaman, and Michelle Mancias | 02/24/04 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| No. | ID | Document | Date | Privilege | Disposition |
|---|---|---|---|---|---|
| 274. | 2527 | E-Mail from Terri Taylor to Tom Seaman | 02/17/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 275. | 2528 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 02/13/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 276. | 2529 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 02/10/04 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 277. | 2530 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 11/07/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |

| | | | | | As Before |
|---|---|---|---|---|---|
| 278. | 2531-2549 | E-Mail from Jon Sands to Richard Schulkins and Tom Seaman with handwritten notes of Tom Seaman and attached documents | 06/19/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | |
| 279. | 2550 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 05/07/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 280. | 2551 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 04/28/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 281. | 2552 | E-Mail from Richard Schulkins to Tom Seaman with handwritten notes of Tom Seaman | 04/18/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 282. | 2553 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 03/10/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 283. | 2554 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 03/06/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 284. | 2555 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 03/06/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | Disclose; |
|---|---|---|---|---|---|
| 285. | 2556 | E-Mail from Terri Taylor to Tom Seaman and David Murphy | 02/27/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 286. | 2557-2560 | Handwritten notes of Tom Seaman | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 287. | 2561 | Handwritten notes of David Murphy re: conference call with Jon Sands, Bruce Kaye, attorney for Greg Giometti and Karl Chambers, Greg Giometti and Karl Chambers | 02/12/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | | | |
|---|---|---|---|---|---|
| 288. | 2562 | Memo from Mark Jachimiak, attorney at SGM, to Greg Giometti | 02/10/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |
| 289. | 2563-2565 | Handwritten notes of David Murphy re: conference call with Greg Giometti, Tom Seaman, Richard Schulkins, and Jon Sands | 02/05/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 290. | 2566 | Handwritten notes of Greg Giometti | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 291. | 2567-2568 | Handwritten notes of Greg Giometti | 02/05/03 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| 292. | 2569-2570 | Handwritten notes of David Murphy re: conference call with Richard Schulkins, Brian Arakaki, Jon Sands and Dave Eaton | 02/03/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 293. | 2571 | Handwritten notes of David Murphy re: conference with Richard Schulkins, Tom Seaman, and Jon Sands | 01/30/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |

| | | | Date | | Disclose; ID |
|---|---|---|---|---|---|
| 294. | 2572-2575 | Draft Motion to Dismiss Counterclaim of Yoon Boon Lee | | Work Product as it pertains to communication between State Farm's legal counsel and State Farm representatives and consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 295. | 2577 | E-Mail from Mary Byrd Dryden, secretary for Greg Giometti, re: telephone call from Bruce Kaye, attorney for Karl Chambers and Greg Giometti | 01/27/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 296. | 2578 | E-Mail from Paula O'Konski to Greg Giometti, Karl Chambers, Mary Frangis, Sarah Christiansen and Terri Taylor | Undated (post-filing of litigation based on content) | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 297. | 2579 | E-Mail from Mary Byrd Dryden, re: telephone call from Steve Baird | 01/14/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm's representatives. | Disclose; ID |
| 298. | 2580-2581 | Handwritten notes of Mary Frangis | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 299. | 2582 | E-Mail from Marlene Beliveau, Faegre & Benson, to Paula O'Konski with handwritten notes of Mary Frangis | 01/07/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 300. | 2586 | E-Mail from Joseph Nistico to David Murphy | 12/30/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 301. | 2587 | E-Mail from Terri Taylor to David Murphy and Greg Giometti | 12/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 302. | 2588 | Memo to File from Mary Byrd Dryden | 12/13/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and State Farm representatives. | Disclose; ID |

| | | | | | Disclose: |
|---|---|---|---|---|---|
| 303. | 2589-2602 | Handwritten notes of Mary Frangis to Tom Seaman, with attached documents | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | ID |
| 304. | 2603-2605 | Draft letter from Tom Seaman to John Grund with handwritten notes of Greg Giometti and Tom Seaman | 11/18/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed: P |
| 305. | 2606-2640 | Miscellaneous Correspondence in unrelated litigation – misfiled | | | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 306. | 2641 | Handwritten note from Tom Seaman to Mary Frangis | 11/21/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 307. | 2642-2647 | Handwritten notes of Tom Seaman re: hearing before Judge Kane | 11/15/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI |
| 308. | 2648 | E-Mail from Terri Taylor to Mary Frangis re: telephone call from Laura Hartford, Court Reporter | 11/15/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 309. | 2649 | Handwritten note from David Murphy to Tom Seaman | 11/13/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 310. | 2650 | E-Mail from Terri Taylor to Greg Giometti, Jon Halaby, Karl Chambers, Mary Frangis and Paula O'Konski and copied to Tom Seaman | 11/08/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |
| 311. | 2651 | E-Mail from Terri Taylor to Greg Giometti, Jon Halaby, Karl Chambers, Mary Frangis and Paula O'Konski and copied to Tom Seaman | 11/08/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 312. | 2652-2662 | Draft Motion with handwritten notes | 11/--/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI |
| 313. | 2663 | Handwritten note of Tom Seaman to Terri Taylor | Undated (post-filing of litigation based on content) | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 314. | 2664 | E-Mail from Mary Dryden to Greg Giometti re: telephone call from Rob Baldwin | 10/21/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose: ID |
| 315. | 2665-2675 | Draft Discovery | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: ID |

| | | | | | |
|---|---|---|---|---|---|
| 316. | 2676 | E-Mail from Mary Frangis to Jon Halaby | 10/10/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 317. | 2677 | E-Mail from Mary Dryden to Tom Seaman re: telephone call from Rich Kaudy | 10/07/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 318. | 2678 | E-Mail from Terri Taylor to Greg Giometti, Jon Halaby, Karl Chambers, Mary Frangis, and Paula O'Konski | 10/02/03 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 319. | 2679-2680 | Handwritten notes of Greg Giometti | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |

| | | | | | |
|---|---|---|---|---|---|
| 320. | 2681 | Handwritten notes of Mary Frangis | 09/18/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 321. | 2682-2686 | Handwritten notes of Tom Seaman re: conference call with Richard Kaudy, Fred Paoli, Rob Baldwin and Greg Giometti | 08/26/02 | Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Not Disclosed; P |
| 322. | 2687-2689 | Handwritten notes of Mary Frangis | 09/30/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |
| 323. | 2690 | E-Mail from Mary Dryden to Greg Giometti re: telephone call from Rich Kaudy | 08/15/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 324. | 2691 | Memorandum from Paula O'Konski to Tom Seaman, Greg Giometti, Mary Frangis, Karl Chambers and Jon Halaby | 09/24/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 325. | 2692 | E-Mail from Mary Dryden to Tom Seaman re: telephone call from Rich Kaudy | 09/04/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. | <u>Disclose;</u> ID |
| 326. | 2693 | Memorandum from Mark Jachimiak to Greg Giometti | 09/16/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |

| | | | | | |
|---|---|---|---|---|---|
| 327. | 2694 | Handwritten notes of Greg Giometti | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | <u>Not Disclosed;</u> P |
| 328. | 2695-2696 | Handwritten notes of Tom Seaman | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> AI |
| 329. | 2697 | Handwritten notes of Mary Frangis | 08/21/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> AI |

| | | | | | |
|---|---|---|---|---|---|
| 330. | 2698-(2712) 2708 | Draft letter to Dave Eaton with handwritten notes of Tom Seaman | 07/12/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |
| 331. | 2709 - 2712 | *Handwritten note from Tom Seaman to Greg Giometti, with attached E-Mail from Sylvia D. Moseley, secretary at SGM* | *07/12/02* | *Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories.* | Disclose; CFE & AI |
| 332. | 2713 | Handwritten notes of Mary Frangis | 08/05/02 | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 333. | 2714-2715 | Handwritten notes of Tom Seaman | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> CFE & AI |
| 334. | 2716 | Handwritten notes of Tom Seaman re: conference with Dave Eaton, Brian Arakaki and Greg Giometti | 07/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose;</u> AI |

| | | | | |
|---|---|---|---|---|
| 335. | 2926-2937 | Letter from Greg Giometti to Dave Eaton re: status of litigation and legal opinion | 07/19/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; AI |
| 336. | 2966-2686 | Fax Cover Sheet from Steve Baird to Greg Giometti with attached documents | 07/17/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; CFE |

| | | | | | |
|---|---|---|---|---|---|
| 337. | 2987-3006 | Fax Cover Sheet from Steve Baird to Greg Giometti with attached documents | 07/11/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose: CFE & AI |
| 338. | 3007-3381 | Letter from Greg Giometti to Richard Schulkins re: status of litigation with attached documents | 09/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose: AI |

| | | | | | Not Disclosed: |
|---|---|---|---|---|---|
| 339. | 3382-3403 | Confidential Settlement Conference Statement from John Rodman to Judge Richard C. Davidson | 07/15/99 | Attorney/Client Privilege and Work Product as it is a communications by John Rodman, attorney representing Mr. Thorne, and contains conclusions, opinions, or legal theories; prepared in conjunction with a mediation and is confidential pursuant to C.R.S. §13-22-307. | P |

| 340. | 3404-3408 | Confidential Settlement Conference Statement from John Rodman to Judge Richard C. Davidson | 10/18/99 | Attorney/Client Privilege and Work Product as it is a communications by John Rodman, attorney representing Mr. Thorne, and contains conclusions, opinions, or legal theories; prepared in conjunction with a mediation and is confidential pursuant to C.R.S. §13-22-307. | Not Disclosed: P |

| | | | | | |
|---|---|---|---|---|---|
| 341. | 3409-3414 | Confidential Settlement Conference Statement from John Rodman to Judge Richard C. Davidson | 01/29/01 | Attorney/Client Privilege and Work Product as it is a communications by John Rodman, attorney representing Mr. Thorne, and contains conclusions, opinions, or legal theories; prepared in conjunction with a mediation and is confidential pursuant to C.R.S. §13-22-307. | Not Disclosed; P |
| 342. | 3513 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 05/05/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| 343. | 3514-3515 | SGM Cost Request from David Murphy to Brian Arakaki with attached invoice | 05/05/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 344. | 3516-3517 | SGM Cost Request from Tom Seaman to Steve Baird with attached invoice | 04/22/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 345. | 3518-3519 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 04/08/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 346. | 3520-3521 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 03/27/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 347. | 3522-3525 | SGM Cost Request from Greg Giometti to Brian Arakaki with attached invoice | 02/24/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 348. | 3526-3528 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 02/24/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | |
|---|---|---|---|---|
| 349. | 3529-3531 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 02/24/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 350. | 3532-3533 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 02/14/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 351. | 3534-3535 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 02/14/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 352. | 3536-3537 | SGM Cost Request from David Murphy to Brian Arakaki with attached invoice | 02/04/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 353. | 3538-3539 | SGM Cost Request from David Murphy to Brian Arakaki with attached invoice | 01/30/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 354. | 3540-3541 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 01/14/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 355. | 3542-3543 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 01/14/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 356. | 3544-3546 | SGM Cost Request from Greg Giometti to Brian Arakaki with attached invoice | 01/06/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 357. | 3547-(3558) 3556 | Fax Cover Sheet from Terri Taylor to Toni Hilton, secretary to Brian Arakaki, with attached SGM Cost Request dated 11/26/02 and fax cover sheets | 01/09/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 358. | 3557 - 3558 | *SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice* | *12/26/02* | *Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel.* | Disclose; ID |
| 359. | 3559-3560 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 12/26/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 360. | 3561-3565 | Fax Cover Sheet from Terri Taylor to Toni Hilton with attached SGM Cost Request dated 12/19/02 and fax cover sheets | 02/19/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 361. | 3566-3567 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 12/13/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 362. | 3568-3569 | SGM Cost Request from Tom Seaman to Brian Arakaki with attached invoice | 12/10/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 363. | 3570-3571 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 12/06/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 364. | 3572-3573 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 12/06/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 365. | 3574-3575 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 12/03/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 366. | 3576-3580 | Fax Cover Sheet from Terri Taylor to Toni Hilton with attached SGM Cost Request dated 11/27/02 and fax cover sheets | 03/10/03 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| 367. | 3581-3582 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 10/24/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 368. | 3583-3584 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 10/24/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 369. | 3585-3586 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 10/24/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |

| | | | | | |
|---|---|---|---|---|---|
| 370. | 3587-3588 | SGM Cost Request from Greg Giometti to Steve Baird with attached invoice | 10/23/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. | Disclose; ID |
| 371. | 3605-3619 | Expense receipts for David Murphy | Various | Credit Card Nos. redacted. | Disclose; ID |
| 372. | 3631-3635 | Fax Memo from Richard Schulkins to Greg Giometti and Karl Chambers with attached documents | 12/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | Disclose; CFE & AI |

| | | | | | |
|---|---|---|---|---|---|
| 373. | 3663 | Letter from Richard Schulkins to Jon Sands | 12/21/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose:</u> AI & ID |
| 374. | 3664 | E-Mail from Richard Schulkins to Brian Arakaki and copied to Dave Eaton, Jon Sands, Tom Seaman and Kent Gorsuch | 12/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives that consists of mental impressions, conclusions, opinions, or legal theories. | <u>Disclose:</u> CFE |

| | | | | | Not Disclosed: |
|---|---|---|---|---|---|
| 375. | 3665-3669 | E-Mail from Richard Schulkins to Tom Seaman | 12/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | P |
| 376. | 3670-(3695) 3693 | Fax Memo from Richard Schulkins to Karl Chambers and Greg Giometti | 12/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. | |

| | | | | |
|---|---|---|---|---|
| 377. | 3704-3708 | E-Mail from Richard Schulkins to Tom Seaman with attached documents | 12/23/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 378. | 3709-3710 | Fax Memo from Richard Schulkins to Karl Chambers | 12/20/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 379. | 3711-3732 | E-Mail from Richard Schulkins to Tom Seaman and Karl Chambers with attached documents | 10/24/03 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 380. | 3746-3751 | E-Mail from Richard Schulkins to David Murphy and Tom Seaman with attached documents | 10/02/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 381. | 3752-(3755) 3754 | Fax Memo from Richard Schulkins to David Murphy with attached documents | 10/03/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 382. | 3755 | *E-Mail from Richard Schulkins to State Farm attorneys* | *10/03/02* | *Attorney/Client Privilege as it is a communication between State Farm's legal counsel and is unrelated to this case* |

| | | | | |
|---|---|---|---|---|
| 383. | 3756-3758 | E-Mail from Marie Williams, Faegre & Benson, to Richard Schulkins, Tom Seaman and David Murphy with attached documents | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 384. | 3759 | E-Mail from Marie Williams to Richard Schulkins, Tom Seaman and David Murphy | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 385. | 3760-3762 | E-Mail from Marie Williams to Richard Schulkins, Tom Seaman and David Murphy | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 386. | 3763-3764 | E-Mail from Richard Schulkins to Marie Williams, Michael McCarthy and Tom Seaman | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 387. | 3765-3766 | E-Mail from Michael McCarthy to Richard Schulkins, Marie Williams, and Tom Seaman | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 388. | 3767 | E-Mail from Marie Williams to Richard Schulkins, Tom Seaman and David Murphy | 10/01/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 389. | 3768-3769 | E-Mail from Richard Schulkins to State Farm attorneys | 10/01/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel and is unrelated to this case. |
| 390. | 3770 | E-Mail from Richard Schulkins to Tom Seaman with E-mail from Dave Eaton to Kent Gorsuch, Counsel for State Farm, and Richard Schulkins | 10/02/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 391. | 3771 | E-Mail from Richard Schulkins to Marc Levy | 10/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. |
| 392. | 3772 | E-Mail from Richard Schulkins to Susan Lambdin | 10/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. |

| 393. | 3773 | E-Mail from Richard Schulkins to Debra Sutton | 10/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. |
|---|---|---|---|---|
| 394. | 3774 | E-Mail from Richard Schulkins to Tom Seaman with E-mail from Debra Sutton to Richard Schulkins | 10/02/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 395. | 3775-3776 | E-Mail from Marie Williams to Tom Seaman and David Murphy | 10/02/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | |
|---|---|---|---|
| 396. | 3778 | E-Mail from Suzanne Lambdin to Richard Schulkins | 10/02/02 | Attorney/Client Privilege as it is a communication between State Farm's legal counsel. |
| 397. | 3779-3780 | E-Mail from Richard Schulkins to Tom Seaman | 10/07/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 398. | 3783-3784 | E-Mail from Richard Schulkins to Tom Seaman | 10/07/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 399. | 3785-3789 | Fax Cover Sheet from Richard Schulkins to Tom Seaman with attached documents | 10/07/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 400. | 3794 | Handwritten notes of Tom Seaman | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. |

| No. | Bates | Description | Date | Basis for Privilege |
|---|---|---|---|---|
| 401. | 3795-3799 | Interoffice Memorandum from Michelle Mancias to Richard Schulkins | 10/02/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 402. | 3800-3801 | Handwritten notes of Tom Seaman | Undated (post-filing of litigation based on content) | Attorney/Client Privilege and Work Product as it consists of mental impressions, conclusions, opinions, or legal theories. |

| | | | | |
|---|---|---|---|---|
| 403. | 3802-3808 | Letter from Greg Giometti to Richard Schulkins re: status of litigation | 09/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |
| 404. | 3809-3815 | Letter from Greg Giometti to Richard Schulkins re: status of litigation | 09/27/02 | Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel that consists of mental impressions, conclusions, opinions, or legal theories. |

| 405. | 3816-3884 | Thorne Electronic Claim File | Various | Log Notes No. 482 dated 11/07/02 and No. 418 dated 07/11/02 – Redacted as Attorney/Client Privilege and Work Product as it is a communication between State Farm's legal counsel and State Farm representatives. Log Notes regarding communications between State Farm and John Rodman have not been redacted because they are within the scope of Judge Kane's Order dated November 15, 2002. | Disclose: CFE & AI |
|---|---|---|---|---|---|

850

| 406. | 3885 | Fax Cover Sheet from Brian Arakaki to Mary at SGM | 12/31/02 | Attorney/Client Privilege as it is a communication between State Farm representatives and State Farm's legal counsel. |
|---|---|---|---|---|

**THE FOLLOWING CATEGORIES OF DOCUMENTS ARE SUBJECT TO THE ATTORNEY/CLIENT PRIVILEGE AND WORK PRODUCT AS THEY WERE PREPARED OR CREATED AFTER THE FILING OF THE SUBJECT LITIGATION ON JUNE 17, 2002 AND ARE COMMUNICATIONS BY OR BETWEEN STATE FARM'S LEGAL COUNSEL THAT CONSIST OF MENTAL IMPRESSIONS, CONCLUSIONS, OPINIONS, OR LEGAL THEORIES.**

| |
|---|
| Privileged Documents Received from Corporate – 33 Files |
| Electronic Claim Log (not redacted) |
| Research |
| Waiver of Attorney-Client Privilege – Research |
| Investigation – Research |
| Documents with Sticky Note titled "Documents for Deposition" (Working Files) |
| Drafts (Working Files) (SF Response to Lee Discovery) |
| Endorsement of Exhibits, Manuals, etc. (Working File) |
| Settlement Conference – Lee/Thorne (Working File and Notes) |
| Plaintiff Lee's Amended Complaint (Working File) |
| Laugesen Deposition (Working File) |
| Michael Hodges (Working File) |

| |
|---|
| Schieltz Deposition (Working File) |
| West Deposition (Working File) |
| Plouffe Deposition (Working File) |
| Black Binder with Memo to Greg from Mark Regarding Review Of Kaudy's Request for Supplemental Responses To Written Discovery with Attached Discovery and Orders |
| Baird Deposition (Working File) |
| Miller Deposition (Working File) |
| Gary Fye Deposition (Working File) (3 files) |
| Legal Research |
| Lee - Legal Standing (Working File and Research) |
| John Grund (Working File) |
| Motion to Compel (includes Exhibit 61 – ACE documents for sealed Motion to Expand Protective Order) (Working File) |
| Plaintiffs' Disclosures (Working File) |
| Motion to Vacate Judgment (Working File) |
| Waiver of Attorney-Client Privilege (Working File) |
| Unlabeled File with Documents from Lee PIP File |
| Unlabeled File with Documents from Lee PIP File |
| Pleadings, Motions, etc. re Motion to Vacate Judgment (Working File) |
| Rule 26(a)(1) Privilege log (with handwritten notes) |
| Seaman & Giometti Amended Rule 26(a)(1) Privilege/Litigation Log – Correspondence Log between Seaman & Giometti and State Farm in Connection with Extra Contractual Claim |
| Pleadings (Working Copies) |
| Attorney notes re Larry Thorne Deposition and Working Copies of Documents |
| Memorandum Brief in Support of Cross Motion for Summary Judgment filed in Grange Insurance Association v. Wertz, El Paso County District Court |

| |
|---|
| Letter from Baldwin & Brown, dated November 21, 2002, enclosing Def. Thorne's Responses to Plaintiff's Request for Admissions, Interrogatories and RFP – duplicates |
| Drafts – Motion to Disqualify Kaudy (Working File) |
| Jerry Wagner (Working File) |
| Ed Gindrich (Working File) |
| Outline for Hearing on Motions for Partial Summary Judgment (Working File) |
| Extra Copy of Thorne's Response to State Farm's Motion for Partial Summary Judgment |
| Extra Copy of Brief Opposing Plaintiff's Motion for Partial Summary Judgment |
| Stack of Documents with sticky label "Stuff from Tom's Desk" (Working Files) (includes Plaintiff State Farm's Motion for Protective Order Regarding Deposition of Rule 36(b)(6) Representative) – (working copies) |
| Misc. Copies of Pleadings and Documents (includes ACE documents) |
| Black Binder Labeled "Lee v. Thorne (Vol. 1 of 3)" with Index titled, "Discovery/Medical Notebook" and tabbed sections (Working File) |
| Black Binder Labeled "Lee v. Thorne (Vol. 2 of 3)" with Index titled, "Discovery/Medical Notebook" and tabbed sections and including loose copy of Coverage Opinion dated April 3, 2002, Memorandum dated Nov. 2, 2001 Re: Fye – Inadmissibility of Opinion Testimony Concerning the Validity of Statements made by Other Witnesses; Fye Documents (identified by Ron Getchey and Misc. Case Law) Rodman Billing Statements (Working File) |
| Black Binder Labeled "Lee v. Thorne (Vol. 3 of 3)" with Index, "Discovery/Medical Notebook" (Working File) |

**THE FOLLOWING CATEGORIES OF DOCUMENTS ARE DUPLICATES/WORKING COPIES AND MAY INCLUDE DOCUMENTS SUBJECT TO THE ATTORNEY/CLIENT PRIVILEGE AND WORK**

**PRODUCT AS THEY WERE PREPARED OR CREATED AFTER THE FILING OF THE SUBJECT LITIGATION ON JUNE 17, 2002 AND ARE COMMUNICATIONS BY OR BETWEEN STATE FARM'S LEGAL COUNSEL THAT CONSIST OF MENTAL IMPRESSIONS, CONCLUSIONS, OPINIONS, OR LEGAL THEORIES.**

| |
|---|
| Pleadings Files – State Farm v. Lee – Vol. 1, Vol. 2, Vol. 3, Vol. 4, Vol. 5 (1 of 2), Vol. 5 (2 of 2) |
| Deborah Plouffe Deposition dated Nov. 14, 2002 |
| Responses – ACE, etc. |
| Rich Report |
| Ricci Letter |
| John R. Rodman Deposition, Nov. 18, 2002 |
| John R. Rodman Exhibits |
| John R. Rodman Deposition, Dec. 18, 2002 |
| John Rodman Exhibits, Vol. 2 |
| Response-Determination of Law |
| Dyann Schlietz Deposition, dated Nov. 11, 2002 |
| Dyann Schlietz Deposition, dated Nov. 11, 2002 |
| Dr. Richard F. Spiegle Deposition, dated May 17, 1999 |
| Thorne Deposition, Nov. 20, 2002 (1 of 2) |
| Thorne Deposition, Nov. 20, 2002 (Vol. 2 of 2) |
| Susan West Deposition dated Nov. 13, 2002 |
| Susan West Deposition dated Nov. 13, 2002 |
| Activity Logs (not redacted) |
| Ads |
| AT v. State Farm – Use of PIP Medical (Research) |

854

Auto Claim Manual – Other Insured

Bahr, Kreidle Documents

Steven Baird Deposition, Nov. 12, 2002

Steven Baird Deposition, dated Nov. 12, 2002

Steven Baird Deposition, dated Dec. 19, 2002 (Vol. 2)

Basic Pleadings (State Farm v. Lee)

Cases

Sean Choi Affidavit dated July 18, 2002

Claim Committee

Disclosures – Letters

Discovery Pleadings

Discovery Requests

Endorsements

Expert Disclosures

Fye Report, dated August 26, 2002

GCM-453

Grund Report

Richard M. Hodges Affidavit, dated July 19, 2002

Richard M. Hodges Deposition, dated Nov. 13, 2003, Vol. 2 of 3

Richard M. Hodges Deposition, dated Jan. 15, 2003 (Vol. 2 of 2)

Injury Evaluation Report

Jury Instruction – BI

Richard W. Laugesen Deposition, dated Nov. 27, 2002

Richard Laugesen Exhibits

File labeled, Lee v. State Farm – "C-31103" with listing of State Farm Testimony Exhibits and What Appear to be Attorney Comments in Right Hand Margin

Yoon Boon Lee Statement, dated July 18, 2002

State Farm Manual – Legal Services Program

File labeled "Misc. Material"

Motion to Vacate Judgment with tabbed Exhibits

News Letter – S&G

Objection to Hearing Delay with Indexed Exhibits

PIP File Materials

Lee PIP File

**THE FOLLOWING CATEGORIES OF DOCUMENTS ARE SUBJECT TO THE ATTORNEY/CLIENT PRIVILEGE AND WORK PRODUCT AS THEY INCLUDE COMMUNICATIONS BETWEEN MR. THORNE AND HIS ATTORNEY JOHN RODMAN AND CONSIST OF MENTAL IMPRESSIONS, CONCLUSIONS, OPINIONS, OR LEGAL THEORIES.**

Original Thorne Claim File

Thorne Claim Log (includes Privilege Log) (Original redacted log)

Electronic Claim Log (not redacted)

Claim File 06-3804-159 – Bates Stamp Labels beginning Thorne CF 000001 through Thorne CF 002396 (w/ Privileged Documents)

Package of Documents with Rule 26(a)(1) Log of Privilege Documents Withheld (and Privileged Documents)

Package of Documents from Thorne Claim File with Confidential Settlement Statements from John Rodman to Judge Davidson

Package of Documents labeled Davidson Correspondence

Black Binder with Misc. Thorne Privileged Documents

Thorne Claim File - Bates Stamp Labeled "SF/Thorne 000001 – 000599" (Working File)

Thorne Claim File – Bates Stamped SF/Thorne 000600 – 001500 (Working File)

Thorne Claim File – Bates Stamped SF/Thorne 001501 – 002180 (Working File)

Two Sets of Documents with Seaman & Giometti Rule 26(a)(1) Log of Privileged Documents

Seaman & Giometti Rule 26(a)(1) Log of Documents Withheld with Attached Copies of Documents

Package of Documents with Seaman & Giometti Rule 26(a)(1) Log of Documents Withheld with Attached Documents Labeled "These Are (Taken) From the Kaudy File Copy"

Seaman & Giometti Rule 26(a)(1) Privilege/Anticipation of Litigation Log – Set Labeled "File Copy;" Set Labeled "Baldwin Copy;" – Set Labeled "These Were Pulled from Rich Kaudy's Documents"